32209. LOOMIS *v.* THE STATE.

338

DECIDED DECEMBER 3, 1948. REHEARING DENIED DECEMBER 15, 1948.

*Homer L. Loomis Sr.*, for plaintiff in error.
*Paul Webb, Solicitor-General, William Hall,* contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ Special ground 1 complains of the testimony of a witness for the defendant, elicited on cross-examination, concerning the contents of an unidentified letter which had been sent to the Columbian organization by some unidentified person. This ground contends that the contents of the letter, which was gone into by the witness, was prejudicial to the defendant, and although it was later withdrawn from the consideration of the jury and the jury instructed by the trial court to disregard it, it is contended that the minds of the jurors were probably already prejudiced against the defendant. In *Collins* v. *State,* 27 *Ga. App.* 223 (107 S. E. 782), it is held as follows: "As a general rule, an error in admitting illegal evidence is cured by subsequently ruling it out. This rule, however, is subject to exception; for where the illegal evidence may have worked such harm or injury to the accused as to render it probable that its subsequent withdrawal did not heal the injury inflicted by its improper admission, the error would be sufficient ground for the grant of a new trial." Thus it appears that the subject of this ground of the amended motion may be made a good assignment of error. However, a study of the original record on file in the office of the clerk of this court, in *Collins* v. *State,* supra, discloses that a motion for a mistrial was made by counsel for the defendant at the time the court ruled out the evidence that had previously been illegally admitted. In the instant case, the evidence was objected to by counsel for the defendant when it was introduced. When it was later withdrawn and ruled out, no motion of any kind was made by counsel for the defendant that invoked any ruling whatever on the part of the trial court with reference thereto. The complaint here is that during the time the evidence remained in the record it probably so influenced the jury that the ruling of the court striking the evidence from the record and instructing the jury to disregard it failed to correct the error. There is no objection to the order ruling it out, and there could be none on the part of the defendant because the ruling is in line with his original objection. See *Heinz* v. *Backus,* 34 *Ga. App.* 203 (128 S. E. 915). The complaint is not based on the original objection to exclude the evidence, because the same was finally in effect

sustained. As previously stated, the assignment of error is based on the alleged harm done during the time the evidence was in the record, but it relates to no particular ruling of the court, none having been invoked by counsel for the defendant with reference thereto. In *Burtine* v. *State,* 18 *Ga.* 534, 537, it is held: "If no exception be taken at the trial, no point made, and the opinion of the court not invoked and not given, there has been no decision, sentence, judgment, or decree of a superior court rendered upon the point; and therefore, by the organic law of this court, we have no right to review the proceeding." The foregoing excerpt was quoted with approval in *May* v. *Lee,* 57 *Ga. App.* 893 (197 S. E. 50).

In order for an assignment of error based on harm done by the introduction of inadmissible and prejudicial evidence—admitted over objection and left in the record for the consideration of the jury for a period of time during the progress of the trial and then ruled out—to be meritorious, a motion for mistrial or some motion tending to right the wrong must be made by the party against whom the evidence was introduced and overruled by the court during the progress of the trial. See *Richards* v. *State,* 55 *Ga. App.* 184 (4); *DeKrasner* v. *State,* 54 *Ga. App.* 41 (12) (supra). This question can not be raised for the first time in the motion for a new trial. This assignment of error is without merit.

▇ The indictment in the instant case charges the defendant and others with having made an assault upon one Clifford Hines accompanying the same with violent and tumultous conduct. At the time the assault was made, all the evidence is in accord that the defendant was not present. Therefore, in order to sustain a conviction against the defendant, the State must rely on a conspiracy to commit the assault, in the manner alleged, between the defendant and the other parties charged therewith. It is the theory of the State that the defendant and the others charged in the indictment with having joined with the defendant in the commission of the offense, as members of the Columbians, entered into a general over-all combine to take over the City of Atlanta and in connection therewith acted with violence and kept on hand firearms and ammunition to further this purpose. It is

the further theory of the State that, in connection with the specific charge contained in the indictment, the defendant and the others charged with having participated with him entered into a conspiracy on the occasion stated in the indictment for the defendant to leave the scene and for the others to beat up any Negroes found on the streets in that vicinity of Atlanta, in accordance with the instructions given them by the defendant, an officer of the Columbians. Therefore, under our general treatment of the subject of conspiracy in this case, we consider special grounds 2, 3, 4, 5, 10, 11, 16, 17, 18, 19, 20, 27, 28, and 32 of the amended motion for a new trial together, as each of these grounds relates to this subject.

Special ground 2 contends that the trial court erred in admitting over objection evidence, as follows: "I heard him (the defendant) say something about Ralph McGill. He said about him writing those articles in the paper—that the Constitution (an Atlanta newspaper) would be blown up, and that they would take Ralph McGill and take him down to Five Points and tie a rope to each limb and tear him apart. He would discuss with me and other young Columbians acts of violence similar to that." Special ground 3 contends that the trial court erred in allowing this testimony to remain in the record for the consideration of the jury after a motion was made by counsel for the defendant to strike and withdraw the same.

Special ground 4 contends that the trial court erred in admitting testimony over objection that the witness heard the defendant curse the Jews a lot, and on numerous occasions applied drastic, profane and disparaging epithets to Ralph McGill, editor of the Atlanta Constitution.

Special ground 5 contends that the trial court erred in admitting over objection testimony as to a large number of firearms and a large quantity of ammunition found upon search by members of the Atlanta Police Department in the home of Ira Jett, a member of the Columbians who supplied Childers, one of the Columbians alleged to have assaulted the victim, with the pistol alleged to have been displayed by Childers to the victim on the occasion of the assault.

The evidence complained of in special grounds 2, 3, and 4 is

material in support of the theory of the State that the defendant and the others named had entered into a general combine to commit acts of violence to take over the City of Atlanta. The evidence contained in special ground 5 is material to show that they were equipping themselves with firearms and ammunition pursuant to the execution of this over-all plan. The general scheme and over-all plan is material to show a motive for the specific assault alleged in the indictment, and to throw light upon the question of whether the defendant and the others had entered into a conspiracy to commit the assault in the manner charged. Any competent evidence revealing motive, knowledge, desire, scheme, or plan is admissible for this purpose. See *Barnes* v. *State*, 57 *Ga. App.* 183; *Fitzgerald* v. *State*, 51 *Ga. App.* 636 (supra). Special grounds 2, 3, 4, and 5 show no cause for a reversal of this case.

█ Special ground 20 contends that the trial court erred in instructing the jury as follows: "You will finally determine your verdict in this case of guilty or not guilty based upon the evidence produced to you, and the instructions from the court that will be given you later." These instructions were given the jury while the State's counsel was outlining the case to the jury at the opening of the trial and before the testimony of any witnesses.

Special ground 32 contends that the trial court erred in failing to grant a mistrial on account of alleged improper remarks made by counsel for the State in the opening of his statement of the case to the jury, as follows: "The State will show that this defendant entered into a conspiracy to take over the world. We expect to show conspiracy on the part of Burke, Loomis, and Childers and other members of the Columbians to commit various acts of violence for the purpose of taking over the City of Atlanta through those acts of violence, that this was their motive, scheme, and general over-all plan, and this particular instance of violence was just one of many." Thereupon counsel for the defendant moved for a mistrial, which motion invoked the ruling of the court, made as follows: "Your motion is denied. I wish to call the attention of the jury to the fact that counsel for the State is merely outlining the contentions of the State, and you will not take his statement or consider it as evidence. It is

not evidence, and it will have no weight upon you in reaching a verdict. He is merely at this time with the permission of the court outlining to the jury the contentions of the State and what the State expects to prove, and his statement is not evidence and not to be considered as evidence, and is not to influence you in reaching a verdict in this case. You will finally determine your verdict in this case of guilty or not guilty, based upon the evidence produced to you, and the instructions from the court that will be given you later." The principal contention of the defendant, alleging this to be error, is that it was highly prejudicial and evidence in support thereof would not have been admissible.

The remarks of counsel complained of in special ground 32 were made during the opening statement of the solicitor-general, in which he was outlining to the jury what he expected to prove. Evidence supporting this statement would have been and was admissible for the reason herein outlined. In *Daniels* v. *State,* 58 *Ga. App.* 599 (3) (199 S. E. 572) it is held as follows: "In opening a criminal case to a jury preliminary to the introduction of evidence, the solicitor-general may state what he expects to prove. If, on an objection to a statement by the solicitor-general, the court declines to interfere, but instructs the jury, 'Of course, you will understand, gentlemen of the jury, what the solicitor says is not evidence, and unless he adduces evidence of what he says he is going to prove, you won't consider it at all,' no error is committed where it does not appear that the remarks of the solicitor-general were otherwise than in good faith." In the instant case, it does not appear that the remarks of the solicitor-general were otherwise than in good faith, and the instructions of the court were substantially like those in the *Daniel* case, supra. Special grounds 20 and 32 are without merit.

■ Special ground 10 contends that the trial court erred in refusing to allow Clarence H. Kite, a witness for the State, after he had testified that before joining the Columbians he had carried a blackjack on the streets of Atlanta and had beaten at least two Negroes on different occasions, to answer the question, "Now would you have beaten up Hines in any event if no one had told you to beat him up?" This is alleged to be error because it is

contended that, had the witness testified he would have beaten Hines in any event, it would have weakened the State's theory that the witness beat up Hines at the instance and direction of the defendant.

Special ground 11 contends that the trial court erred in reference to permitting Clarence H. Kite, a witness for the State, to answer the question, "Why did you think he (the Negro Clifford Hines) was putting his hand in his pocket?" This is alleged to be error because, had the witness testified that he though he was putting his hand in the pocket to procure a deadly weapon, the assault by the witness would have been justified on the theory of self-defense and thereby the theory of the State that the assault was at the instance and direction of the defendant would have been accordingly weakened. These grounds are urged for the purpose of showing that the victim was not beaten up as the result of the conspiracy, provided the witness would have answered that he would have beaten him up in any event and without instructions to that effect by the defendant, and on the theory that the beating up was justified as the victim was putting his hand in his pocket, provided the witness would have testified that he thought he was putting his hand in there to draw a deadly weapon. As to special ground 10, the witness positively testified that he did beat up the victim because he was instructed to do so by the defendant. It is therefore immaterial what he might have done in the absence of such instructions. As to special ground 11, an examination of the testimony in the record discloses that the witness testified that the victim tried to put his hand in his pocket after the witness had struck the victim, and the latter was down with the former on him and continuing to beat him. Therefore any effort on the part of the victim to draw a deadly weapon at this stage of the assault could in no wise have justified it on the theory of self-defense. These grounds are without merit.

Special ground 16 contends that the trial court erred in charging the jury as follows: "If you find that there was a conspiracy between this defendant and other persons to do a criminal act—to do the criminal acts alleged, then, whatever was done in pursuance of that conspiracy, during its pendency, would

be just as binding upon the defendant as if he himself had done it, and this would also be true should you find that the defendant on trial was not present at the commission of the act." This is alleged to be error because it is contended that, even if there was evidence of a pending conspiracy, there could be no concert of action between the defendant and those accused of riot with him unless he was present at the commission of the acts alleged to constitute the riot.

Riot is a misdemeanor. See Code, § 26-5302. All persons who procure, counsel, command, aid or abet in the commission of a misdemeanor are regarded by the law as principal offenders. See *Grant* v. *State*, 47 *Ga. App.* 234 (170 S. E. 394). In *Chambers* v. *State*, 194 *Ga.* 773, 781 (22 S. E. 2d, 487), it is held: "Where individuals enter into a conspiracy to commit a crime, its actual perpetration by one or more of them in pursuance of such conspiracy is in contemplation of law the act of all, and therefore is imputable to all, regardless of their presence or absence at the time it is committed." See also *Statham* v. *State*, 84 *Ga.* 17, supra. The excerpt from the charge complained of is a correct principle of law of this State, and this ground of the amended motion for new trial shows no cause for a reversal of this case.

Special ground 17 contends that the trial court erred in charging the jury as follows: "This agreement (constituting a conspiracy, which the court charged, was a corrupt agreement formed between two or more persons to do an unlawful act) may be established by direct proof or by inference as a deduction from conduct which discloses a common design on the part of the persons charged, to act together for the accomplishment of the unlawful purpose." This is alleged to be error because it is contended that it amounted to an expression of an opinion on the part of the judge that there was direct evidence of a conspiracy, it being contended there was no direct evidence thereof, but if there was any evidence, it was only circumstantial; also because the instruction failed to go far enough and charge the jury that, in order to warrant a finding against the defendant of a conspiracy, the evidence thereof must be sufficient to satisfy their minds and consciences beyond a reasonable doubt; also,

because as regards the circumstantial evidence of conspiracy, if any, the judge failed to go far enough and include that, in order to warrant a finding thereof against the defendant, the circumstances must not only be consistent with the hypothesis of the conspiracy agreement, but must exclude every other reasonable hypothesis.

Special ground 19 contends that the trial court erred in charging the jury as follows: "Now, gentlemen, if you do not find that there was a conspiracy between the defendant on trial and others, as contended by the State in this case, then you would disregard these instructions that I have just given you relative to conspiracy." This is alleged to be error because of the principal contention of the defendant that it was confusing to the jury, in that it failed to instruct them as to the difference between circumstances of a conspiracy shown by acts and declarations of others outside the presence of the defendant, and circumstances thereof as shown by acts and declarations of the defendant himself and of others in his presence. There was direct evidence of the conspiracy to beat up the victim. This fact was positively testified to by the witnesses Childers and Kite. Proof of this conspiracy, therefore, was not dependent entirely on acts and declarations of others amounting to circumstantial evidence. There being direct evidence of the conspiracy, it was not error to omit to charge on the law of circumstantial evidence. See *Bowen* v. *State*, 181 *Ga.* 427, 428 (4) (182 S. E. 510). Other contentions that these excerpts from the charge amount to error are without merit. Had the defendant desired a fuller and more complete charge on this subject, he should have requested the same in writing.

Special ground 18 contends that the trial court erred in charging the jury as follows: "I further charge you, gentlemen, in that connection that, if no conspiracy *or* concert of action be shown, each person would be responsible only for his own acts." This is alleged to be error because it is contended that as applied to the defendant both conspiracy *and* concert of action is necessary in order to warrant a conviction, and that the charge would have authorized the jury to find the defendant guilty upon finding present only one of these essential elements.

While it is well settled that in riot cases there must be present common intent *and* concert of action in the furtherance of such intent (*Walker* v. *State,* 17 *Ga. App.* 525 (1) (87 S. E. 711) the trial judge in the instant case fully instructed the jury to this effect elsewhere in his charge. The charge in the instant case, wherein he used the word *"or"* instead of *"and,"* appears to be a verbal inaccuracy resulting from a slip of the tongue and accordingly not misleading. In such case the same constitutes no cause for a new trial. See *Southern Ry. Co.* v. *Merritt,* 120 *Ga.* 409(1), supra. Inaccuracies are immaterial where the whole charge lays down the law correctly. See *Thomas* v. *State,* 27 *Ga. App.* 38 (4) (107 S. E. 418). If the charge as a whole be correct, the fact that a part of it, considered alone, is objectionable will not require a new trial. See *Brown* v. *Matthews,* 79 *Ga.* 1, 11 (4 S. E. 13).

Special ground 27 contends that the trial court erred in failing to charge the jury as follows: "In passing on the question whether the defendant had, prior to the commission of the allegedly unlawful acts alleged in the indictment, formed or joined in, with others, a conspiracy to commit said allegedly unlawful acts or others similar thereto or embracing or comprehending the same, the jury must disregard, discard, and close their minds and consciences to all of that evidence in the case relating to, and offered as proof of, the acts and declarations of persons other than the defendant done and made respectively out of his presence and without his knowledge and concurrence [save as shown by such conspiracy, if later and on other proof established]." The principal contention of the defendant, alleging this to be error, is that there was evidence of acts and declarations of others charged with having joined together with the defendant in the commission of riot, outside the presence of the defendant, this excerpt is contended to be necessary in order that the jury might exclude from their consideration acts and declarations of others outside the defendant's presence and thereby not hold the defendant accountable therefor.

Special ground 28 contends that the trial court failed to charge the jury as follows: "If you find no conspiracy between movant and others, as contended by the State in this case, you will dis-

regard, and shut your minds and consciences against, any and all evidence, in the case, of acts and declarations on the part of such others, done and made respectively out of the movant's presence and without his knowledge or approval."

The trial judge charged the jury fully on the subject of conspiracy, the necessity for common intent, the definition of conspiracy, and then charged as follows: "If you believe, gentlemen, beyond a reasonable doubt that the defendant on trial and other persons, acting with a common intent, and with a concert of action and in furtherance of such common intent did make an assault upon Clifford Hines, and did assault, strike, and beat Clifford Hines, and attempted to commit a violent injury upon the said Clifford Hines, accompanied with violence and tumultous conduct, you would be authorized to find the defendant, Homer Loomis Jr., guilty of the offense charged in the indictment." He also charged the jury as follows: "If, on the other hand, you have a reasonable doubt of his guilt of the offense charged in the indictment, it is equally your duty to acquit him." From the charge of the court the jury must have understood that it was necessary, in order for the defendant to be convicted, for him to have entered into a conspiracy to commit the crime; and conspiracy having been fully defined, it was not error, in the absence of request, to fail to charge the excerpts the omission of which is alleged, in special grounds 27 and 28, to be error. Had the defendant wanted the matter charged as contained in these grounds, he should have so requested in writing.

These assignments of error show no cause for a new trial.

■ Special grounds 6, 9, 12, and 14 are considered together, because each complains of rulings wherein witnesses were not permitted to answer certain questions, and an examination of the questions themselves will show them to be either argumentative or prejudicial in form or seeking to establish evidence already in the record.

■ Special ground 6 contends that the trial court erred in refusing to allow a witness for the defendant to answer the question, "What happened when those Jews from New York came in there?" This question related to Mario Buzzi or Mario Falco and Renee Forrest or Renee Fruchtbaum. It is contended that,

had the witness been permitted to answer, it would have been as follows: "Buzzi came first and gave the name of Falco. He came in on Sunday and the girl the next day. He said he wanted some help. He said something about starting an organization in New York. I wished to find out what this man and woman were doing. I led them on; and they said: 'Be able to go on 15 minutes' notice, and don't tell your family or the Columbians.' The same night of the meeting (of the Columbians, November 28th), we left the meeting and went to Renee's hotel room. I agreed to go to New York with them. They were trying to induce me to come to New York. They were the ones who extended the invitation, and I finally agreed to go. I think he said he was going to Tampa on a vacation and that I could go with Renee, and Renee said 'We will go together.' He had agreed to pay me $75 per week. They left for New York the next day, and Sheldon (the director of the Anti-Nazi League) sent me an airplane ticket later. He notified me that the airplane ticket was on the way. When the ticket came, we went over to see it. After I talked to Renee several times (over long-distance telephone), we decided to send it back. . . I told her I did not care to come and the ticket was sent back."

The refusal to allow this testimony is alleged to be error, because it is contended that the Anti-Nazi League, a Jewish organization in New York, was the real prosecutor of the case against the defendant; that its sole purpose in sending its agents, Buzzi and Fruchtbaum, to Atlanta to become members of the Columbian organization under the names of Falco and Forrest was to lure certain members of the organization, including the State's witness, James Ralph Childers, to New York, lavish financial inducements, and there undergo an extensive course of coaching to prepare them to appear before the Fulton County grand jury later and a trial jury to give false and perjured testimony against the defendant.

It is contended that the testimony of Childers was procured in this way, and that this evidence was being offered to throw light upon the motive of Childers' testimony against the defendant.

The persons referred to as "Jews from New York" were not witnesses in the case. They were not parties. Whatever the

witnesses might have testified in the way of efforts put forth by them to get her to swear falsely, according to her testimony, it did not have the desired result. Also, the form of the question should have been put so as to ask the witness what happened when these persons, naming them, came, instead of asking what happened when those "Jews from New York" came. Prejudice should in no event be unnecessarily injected into the trial of a case. Particularly is this true of a case such as the instant one, the very nature of which makes the bringing in of some prejudicial matter inescapable. The very form of the question referred to in this ground of the amended motion reeks with prejudice. Even had the answer sought been admissible, the ruling of the court in refusing to allow the witness to answer the question in its form was a proper exercise of discretion tending to safeguard the case from the injection of unnecessary prejudice.

As a general rule, in order for the refusal to permit a witness to answer a question to constitute a ground for a new trial, it must appear that a pertinent question was asked, that the court ruled out the answer, that a statement was made to the court at the time showing what the answer would have been, and that such testimony was material and would have been beneficial to the complaining party. See *Barron* v. *Barron,* 185 *Ga.* 346 (194 S. E. 905). Here the form of the question was such that a pertinent question was not asked. It is not necessary for us to pass upon the question of whether or not the testimony would have been material.

 Special ground 9 contends that the trial court erred in not permitting Clarence H. Kite, a witness for the State, who had testified that he was the same Clarence Kite who had recently been convicted in the Superior Court of Fulton County of the theft of an automobile, as per record thereof marked Exhibit I, to answer a question propounded by counsel for the defendant on cross-examination, as follows: "Are you ashamed of being the same Clarence Kite as the one named in that Exhibit I?" This is alleged to be error because it is contended that, had the witness been permitted to answer, he would have either stated in substance that he was ashamed or that he was not ashamed of the fact, and that he would be less credible if he was not ashamed than if he was.

Code § 38-1704 provides as follows: "It shall be the right of a witness to be examined only as to relevant matter; and to be protected from improper questions and from harsh or insulting demeanor." That the witness had been convicted of the theft of an automobile, had already been established. Upon that fact having been proved, whether or not he was impeached was for the jury, and the control of the conduct of counsel, exercised by the trial court in not permitting the answer to the question set out in this ground, was not an abuse of discretion. See *Cohen* v. *Saffer*, 43 *Ga. App.* 746 (2) (160 S. E. 130). In his refusal to allow the answer to this question the judge performed his duty, which is to protect the witness on cross-examination from being unfairly dealt with, and at the same time to allow a searching test of his intelligence, memory, accuracy, and veracity. See *Harris* v. *Central R.*, 78 *Ga.* 525 (3) (3 S. E. 355).

■ Special ground 12 contends that the trial court erred in refusing to allow James Ralph Childers to answer the questions: "As a matter of fact, he (Sheldon, director of the Anti-Nazi League) was interested in the outcome of this case?" and "You knew they were not doing that for nothing (paying the witness's expenses), did you not?" "Don't you think, in view of all the money you have received, and the treatment you have been accorded by Mr. Sheldon and his organization, that you owe them some obligation to tell a story favorable to them?" This is alleged to be error because it is contended that the right of the defendant to have conducted in his behalf a thorough and sifting cross-examination included the right to ask and have answered these questions to show that the witness had been subsidized and motivated to swear falsely.

A question propounded by counsel on cross-examination is allowable for the purpose of testing the intelligence of the witness, his memory, accuracy, and veracity, but must not be argumentative. See *Harris v. Central R.*, supra; *Loomis* v. *State*, 78 *Ga. App.* 153 (9) supra.

■ Special ground 14 of the amended motion for a new trial contends that the trial court erred in refusing to allow Clarence H. Kite to answer, on cross-examination by counsel for the defendant, the question, "I ask you whether or not you were

convicted in the Superior Court of Fulton County at the January term, 1947, in case No. 61,129, the State against Clarence Kite, on the charge of stealing an automobile, and sentenced to 12 months work and labor, the sentence to start running January 16, 1947?"

The exclusion of the answer to this question was harmless to the defendant, because the same witness elsewhere in his testimony stated that he was the same Clarence H. Kite referred to in the exhibit showing him to have been convicted. The exhibit was the highest and best evidence of his conviction.

Special grounds 6, 9, 12, and 14 assign no cause for a new trial.

■ Special ground 7 contends that the trial court erred in withholding from the jury the testimony of Clarence H. Kite, a witness for the State, to the effect that he did not know of any other instances (than that of the beating of Clifford Hines, alleged in the indictment) in which any member of the Columbians was involved in the beating of anyone or in the commission of any act of violence; that he had heard about one other Negro having been carried off at the point of a gun by persons claiming to be Columbians for investigation for rape; and that the Columbians undertook to help poor white people. The exclusion of this evidence is alleged to be error because it was elicited first by counsel for the defendant on cross-examination without objection on the part of the State's counsel; that later on redirect examination the State's counsel sought unsuccessfully to weaken the testimony, and then moved to exclude the same, and the court granted said motion and ruled out the testimony. An examination of the original brief of the evidence discloses that, when the witness first testified about a rumor that a Negro had been carried off at the point of a gun by persons claiming to be Columbians for investigation for rape, counsel for the defendant moved that this testimony be striken, and the court ruled as follows, "You have invited it and I cannot rule it out." The record does not disclose what counsel for the defendant did to invite the unfavorable answer, nor is the ground shown upon which the motion to strike it was based. However, where an unfavorable answer is elicited on cross-examination, though the

other side could not have introduced it, it will not be ruled out. See *Anderson* v. *Brown*, 72 *Ga.* 713, 714 (8). Later, according to the brief of evidence, counsel for the State, on redirect examination asked a question as follows: "He asked you about acts of violence by the Columbians—did you ever hear anything about the Columbians trying to burn a Negro house?" Mr. Loomis Sr. (counsel for the defendant): "I object to that." The Court: "Yes, that would be rank hearsay." Mr. Andrews (counsel for the State): "Then I move to exclude all of his testimony about how many acts he had heard about of violence by the Columbians." The Court: "Your motion will likewise be sustained, and all of that evidence is stricken." Obviously the ruling of the court was not antagonistic to any motion or objection being interposed at the time by both counsel for the State and for the defendant. This ground of the amended motion for a new trial is without merit.

■ Special ground 8 contends that the trial court erred in withholding from the jury the testimony of Clarence H. Kite, a witness for the State, in answer to a question, if he was thrown out of the Columbians' office on the evening of February 1, 1947, by the defendant, "I was drunk, I don't know how I got out."

Special ground 13 contends that the trial court erred in refusing to allow Clarence H. Kite, a witness for the State, to answer, on cross-examination by counsel for the defendant, the question, "And then you proceeded to curse up there and used indecent language and attacked the defendant, Homer L. Loomis Jr., did you not?" This is alleged to be error, because the answer to these questions would have shown bad feelings between the witness and the defendant and a motive for his testimony contended by the defendant to be false.

This witness had previously testified on cross-examination that there was bad blood between him and the defendant. The witness, therefore, not only did not deny that there were bad feelings between him and the defendant, but expressly in his testimony affirmed it. In *Sasser* v. *State*, 129 *Ga.* 541 (6) (59 S. E. 255), it is held: "The refusal of the court to permit counsel for defendant to ask a witness for the State about a difficulty between him and defendant, to show his ill feeling toward defend-

ant, is not error, unless the witness denies such ill feeling."

These assignments are without merit.

■ Special ground 15 contends that the trial court erred in refusing to permit the defendant to propound a question to two jurors. This motion was made by counsel for the defendant as the jurors were seated in the jury box, after they had been put upon the defendant and before they were passed upon by him. The motion was made in order to afford the defendant an opportunity to challenge them and exclude them if from their answers they were found to be disqualified. The defendant had previously used up all his peremptory challenges, and because the court would not permit him to ask these questions and then disqualify the jurors if their answers so required, it was necessary for him to go to trial with them as members of the jury.

In *Hagans* v. *State*, 77 *Ga. App.* 513 (48 S. E. 2d, 700), it is held as follows: "1. Challenges are, generally speaking, of two sorts: challenges to the array and challenges to the poll. A challenge to the poll may be either (1) peremptory, or (2) for cause. *Mitchell* v. *State*, 69 *Ga. App.* 771, 776 (26 S. E. 2d, 663). 2. The challenge for cause is in one or two forms: (1) for principal cause, or (2) to the favor. *Mitchell* v. *State*, supra. 3. A challenge for cause should be so made as to show clearly whether it is a challenge for principal cause or a challenge to the favor. *Turner* v. *State*, 114 *Ga.* 421, 424 (40 S. E. 308). 4. 'Generally "voir dire" denotes the preliminary examination which the court may make of one presented as a juror, where his competency or qualifications are objected to.' *Croft* v. *State*, 73 *Ga. App.* 318 (1) (36 S. E. 2d, 200). 5. 'In trials for misdemeanors there is no right to examine a juror upon his voir dire without first challenging him and assigning a cause of challenge.' *Schell* v. *State*, 92 *Ga.* 459 (2) (17 S. E. 966). 6. A proper challenge to the poll for principal cause may be: 'I challenge the individual juror (naming him), for principal cause and assign as the reason for my challenge that (state specifically the reason).' 7. A proper challenge to the poll for favor (undue influence or prejudice) may be: 'I challenge the individual juror, (naming him), for favor and assign as the reason for my chal-

lenge that (state specifically the reason); and I request that the juror be put upon the court as the trior.' "

Obviously the challenge here, had it been properly made, was intended to be to the favor. However, the challenge was not properly made, as the jurors were not named. The procedure for this challenge must be strictly followed. This ground of the amended motion for new trial is without merit.

■ Since special grounds 21 and 29 deal with the same subject-matter, they are considered together.

Special ground 21 contends that the trial court erred in charging the jury as follows: "If you believe, gentlemen, beyond a reasonable doubt that the defendant on trial and other persons, acting with a common intent, did make an assault upon Clifford Hines, and did assault, strike and beat Clifford Hines, and attempt to commit a violent injury upon the said Clifford Hines, accompanied with violent and tumultuous conduct, you would be authorized to find the defendant, Homer Loomis Jr., guilty of the offense charged in the indictment."

Special ground 29 contends that the court erred in failing to charge the jury as follows: "Where, as here, the unlawful act charged in the indictment—in the alleged execution of which the offense of riot is alleged to have consisted in whole or part—is an assault or an assault and battery, the defendant may give in evidence to the jury any opprobrious words, or abusive language, used by the prosecutor, or person assaulted or beaten; and such words and language may or may not amount to a justification, according to the nature and extent of the battery, all of which shall be determined by the jury."

The principal contention of the defendant, alleging this charge and omission to be error, is that there was some evidence that Clifford Hines used such opprobrious words to those alleged to have assaulted him as to have provoked a justifiable assault, and that the charge and omission complained of in effect withheld from the jury consideration of the question of whether or not such assault was justifiable.

There is no evidence in the record that Clifford Hines used opprobrious words to the persons assaulting him. There is evidence that two of the State's witnesses made prior contradictory

statements to this effect. However, these witnesses did not so testify on the trial of this case nor did any other witness. On the contrary, all the witnesses who testified on this subject stated that they heard Clifford Hines use no opprobrious words to those assaulting him.

A prior contradictory statement is admissible for the purpose of impeaching a witness shown to have made it, but is not in itself probative evidence which will tend to prove any fact therein contained. See *Progressive Life Ins. Co.* v. *Archer*, 73 *Ga. App.* 639 (37 S. E. 2d, 713); *Henry* v. *Hoch*, 76 *Ga. App.* 819, 823 (47 S. E. 2d, 159). These assignments are without merit.

■ Special grounds 22 and 29 are considered together, because they relate to the same subject-matter.

Special ground 22 contends that the trial court erred in charging the jury as follows: "You are made by law the exclusive judges as to the credibility of the witnesses. In passing upon and determining the credibility of the witnesses, the jury may consider all the facts and circumstances of the case, the witnesses' manner of testifying, their intelligence, their interest or want of interest, their means and opportunity for knowing the facts to which they testify, the nature of the facts to which they testify, the probability or improbability of their testimony, and also their personal credibility, in so far as the same may legitimately appear from the trial of the case." The principal contention of the defendant, alleging this to be error, is that the charge failed to go far enough on the subject of impeachment; that it failed to include the statutory rule that witnesses are presumed to speak the truth and are to be believed unless impeached or discredited; that it failed to instruct how impeached witnesses may be sustained; that it failed to instruct the jury that witnesses may be impeached by proof of facts contrary to those testified to by the witnesses, by proof of contradictory statements previously made by witnesses and by proof of general bad character of the witnesses.

Special ground 25 contends that the trial court erred in failing to instruct the jury as to the method for the impeachment of witnesses, alleged to have been omitted from the charge complained of in special ground 22.

The excerpts from the charge complained of in special ground

22 is a principle of law applicable to this case. It is a charge on the credibility of witnesses, and not on the subject of how witnesses may be impeached. It is well settled that it is not incumbent on the trial judge, in the absence of a timely and appropriate written request, to charge upon the subject of the impeachment of witnesses. If he does so at all, he should give all the law on this subject authorized by the evidence. See *Smaha* v. *George*, 195 *Ga.* 412, 419(a) (24 S. E. 2d, 385). Since the trial judge did not charge the jury as to any method of impeachment, it is unnecessary to determine whether or not his failure so to charge as to some of such methods is not error. See *Millen & Southwestern R. Co.* v. *Allen*, 130 *Ga.* 656 (5) (61 S. E. 541). See also *Huff* v. *State*, 104 *Ga.* 521 (6) (32 S. E. 808). These assignments are without merit.

■ Special ground 23 contends that the trial court erred in charging the jury as follows: "Good character is a positive substantive fact, and may of itself be sufficient to justify a reasonable doubt as to the guilt, or considered with the other evidence in the case may be sufficient to create such a doubt." The principal contention of the defendant, alleging this to be error, is that part of the charge, "and may of itself be sufficient to *justify* a reasonable doubt as to guilt," was erroneous, it being contended that the charge should have said, to *create* or *generate* a reasonable doubt. (Italics ours.)

Although the language of the trial court, substituting the word "justify" for the word "generate," is not here approved as a proper charge on the subject of good character, yet we do not believe that the jury was misled by it. In *Shropshire* v. *State*, 81 *Ga.* 589 (82 S. E. 450), the charge which was held to be error in effect took away from the defendant the benefit of his evidence of good character unless the jury already entertained a doubt as to the defendant's guilt. The law is well settled that, regardless of whether or not the defendant has any other defense, and regardless of whether or not there is any other evidence in the record upon which a reasonable doubt as to his guilt could be based, proof of good character may of itself constitute such a defense in his behalf, and the jury, overriding any amount of positive evidence pointing to the guilt of the defendant, may, if

it sees fit, acquit him upon the reasonable doubt that the proof of good character generated in their minds. However, in the absence of request, it was held in *Widner* v. *State,* 197 *Ga.* 542, 545 (30 S. E. 2d, 97), not to be error where the charge on the subject of good character was as follows: "The defendant has introduced some evidence as to his good character. That is a matter you can consider, along with the other evidence in the case, in determining whether or not the defendant be guilty or not guilty."

A careful study of the language of the charge here complained of discloses that the jury could hardly have understood the instructions to mean that the proof of the good character of the defendant would only justify a reasonable doubt which they already entertained as to his guilt, but rather it would indicate to the jury that such evidence would justify a doubt based upon it alone. In the latter case, it would have the same import had the proper word, "generate" or "create," been used.

■ Special ground 24 contends that the trial court erred in failing to charge on circumstantial evidence. The principal contention of the defendant, alleging this to be error, is that the evidence against him was circumstantial.

As pointed out in division 2(e) hereof, the evidence of the conspiracy to beat up some Negro is direct. The actual beating up of Clifford Hines by coconspirators of the defendant is supported by the evidence.

Where the evidence upon which the State depends for conviction is both direct and circumstantial, it is the better practice to charge Code § 38-109 on circumstantial evidence. However, in the absence of request, it is not reversible error to fail so to charge. See *Middleton* v. *State,* 7 *Ga. App.* 1 (1) (66 S. E. 22).

■ Special ground 26 contends that the trial court erred in failing to charge the jury as follows: "In determining what your verdict shall be, whether one of guilty or one of not guilty, you will consider not only the evidence but defendant's statement as well. You will base your verdict on the truth as you find it produced to you, whether that shall be found by you to exist in the evidence alone or in some part of the evidence alone, in defendant's statement alone or in some part of defendant's

statement alone, or in part in the evidence and in part in defendant's statement." The principal contention of the defendant, alleging this to be error, is that, since reference to the defendant's statement was omitted from the instructions to the jury referred to hereinbefore, as follows, "You will finally determine your verdict in this case of guilty or not guilty, based upon the evidence produced to you, and the instructions from the court that will be given you later," and since reference to the defendant's statement was also omitted from the oath administered to the jury wherein they were sworn to determine the case according to the evidence—the instructions, the omission of which is alleged to be error here, are contended to have been necessary in order that consideration of the defendant's statement might have been given full force and effect by the jury.

The trial judge charged the substantial language of Code § 38-415, providing as to the defendant's statement and its weight. In *Glover* v. *State*, 137 *Ga.* 82 (4) (72 S. E. 926), it is held as follows: "The practice of instructing the jury in the language of the Code section as to the effect to be given to the defendant's statement is to be commended."

It is the better practice to give in charge the statute on the defendant's statement and its effect and there leave the matter. See several cases cited under catchword "Charge," Code (Ann.) § 38-415. As hereinbefore pointed out, at the time counsel for the State was outlining his case to the jury before the introduction of any evidence, and counsel for the defendant had objected thereto, the court instructed the jury as follows: "You will finally determine your verdict in this case of guilty or not guilty, based upon the evidence produced to you, and the instructions from the court that will be given you later." The later instructions included a proper charge on the defendant's statement and its effect.

The contention that the oath administered to the jury also should have directed the jury to "a true verdict give according to evidence" *and the defendant's statement,* is without merit, because the oath which omits any reference to the defendant's statement is provided for in Code § 59-709, and was administered in this case according to the exact language of this section.

See *Burke* v. *State*, 76 *Ga. App.* 612, 615 (1) (47 S. E. 2d, 116).
See also *Loomis* v. *State*, 78 *Ga. App.* 153 (51 S. E. 2d, 13).

■ Special ground 30 contends that the court erred in failing to grant a mistrial, on motion of counsel for the defendant, on account of certain alleged improper remarks made by counsel for the State in the presence of the jury during the redirect examination of James Ralph Childers, a witness for the State, as follows: "He (referring to movant's counsel) has made a big to-do about this man going back to New York. I want to show that he was intimidated to such an extent that we had to send him back to New York." Thereupon, after the defendant's motion for a mistrial had been made and the court had overruled it, and was ruling on his motion as follows, "Now the mere fact the police were called . . ," State's counsel interrupted the court at this point as follows: "And took him (Ira Jett) out of his (Childers') room."

The witness Childers had just testified that, upon his return from New York, the defendant made a threat over the telephone that he would be shot if he testified against him; that Ira Jett, whom the witness Childers testified furnished guns to the Columbians, had come to Childers' room and later called the police. Thus the remarks herein complained of were led up to, resulting in the motion for a mistrial which the court overruled in language as follows: "The motion for a mistrial is denied. Gentlemen, don't let that influence you." It is contended that the defendant would have assigned error on the admission of the testimony that the police had been called by Childers to get Ira Jett out of his room, had not counsel for the State, immediately after getting in the parting shot that the police had taken Jett from Childers' room, quickly added, "In the interest of time I withdraw it." The principal contention of the defendant, alleging this to be error, is that, upon denying the motion for a mistrial, the court did not rebuke counsel or otherwise remedy the harm.

Special ground 31 contends that the trial court erred in failing to grant a mistrial, upon motion of the defendant, on account of certain alleged improper remarks made by counsel for the State during the direct examination of James Ralph Childers, a witness

for the State, and in the presence of the jury. It is contended that the witness had just testified as to having heard the defendant make particular disparaging remarks about Ralph McGill, had heard him curse Jews, and referred to Dan Duke as such, and thereupon counsel for the State asked the witness, "Did you hear him say anything about Jesus Christ?" Thereupon the defendant moved for a mistrial, and the court ruled as follows: "I will not permit him to answer it. You will ask another question. A mistrial is not allowed, and the jury will understand the question was not answered and you will not consider it." The principal contention of the defendant, alleging this to be error, is that the question amounts to an implication to the jury that the defendant had said to the witness things about Jesus Christ equally offensive as those he had said about Ralph McGill, and that the harm was not corrected by the ruling of the court, which contained no rebuke of counsel.

Assuming but not deciding that the remarks of counsel complained of in special ground 30 were improper, we can not see where the same could have been prejudicial to the defendant, because the court instructed the jury not to be influenced thereby, and the question which counsel for the State had asked, invoking the objection on the part of counsel for the defendant leading to the remarks, was withdrawn by counsel for the State.

The question referred to in special ground 31, although improper, was not answered, and the trial court promptly instructed the jury not to consider it.

There was much bickering between counsel for both sides in this case. Much of the time of the court was taken up by the trial judge in rebuking counsel for both sides for directing remarks to each other and otherwise attempting to unnecessarily inject prejudice into the case. In some instances throughout the trial the judge of his own volition ruled out questions and reprimanded counsel. In view of these facts and the fact that the court promptly declined to permit an answer to the question here complained of, and instructed the jury not to consider it, we do not feel that the same constitutes reversible error. See, generally, cases cited under catchword "Rebuke," Code (Ann.) § 81-1009. See also, for a general discussion of this subject, *Brook* v. *State*,

183 *Ga.* 466, 468 (188 S. E. 711, 108 A. L. R. 752).; *Hicks* v. *State,* 196 *Ga.* 671, 673 (27 S. E. 2d, 307), and cases there cited. These assignments show no cause for a new trial.

■ Special ground 33 is based on newly discovered evidence, and contends that the same is not merely impeaching in its character. However, the effect of showing that efforts were made to get certain persons to testify falsely against the defendant, which persons did not testify at all, could only be material as a circumstance to show that the same effort was made to get those who did not testify against the defendant to likewise swear falsely. Therefore it follows that the newly discovered evidence is merely impeaching in its character and is therefore not a good ground for a new trial. See many cases cited under catchword "Impeach," Code (Ann.) § 70-204.

In any event, this is a discretionary ground, and the judgment of the trial court overruling a motion for a new trial based thereon will not, in the absence of abuse, be disturbed. See *Moss* v. *State,* 44 *Ga. App.* 244 (161 S. E. 293).

■ The evidence in the instant case was sufficient to show a conspiracy between the defendant and more than two others to seize and beat up some Negro if found on the streets in a certain area of Atlanta. It was also sufficient to show a beating up of Clifford Hines, pursuant to this conspiracy by two or more others than the defendant with whom the defendant conspired, in a violent and tumultuous manner. See *Statham* v. *State,* supra; *Chambers* v. *State,* supra.

Riot being a misdemeanor, all who participate therein are guilty as principals, and although the defendant was not immediately present at the whipping of Hines, the evidence was sufficient to show that he had conspired with those who were present to commit the crime, and his absence from the scene does not prevent him from being a principal in the misdemeanor. The verdict is supported by the evidence, and the general grounds show no cause for the grant of a new trial.

*Judgment affirmed. MacIntyre, P. J., and Gardner, J., concur.*