### 69292. MILLWOOD v. THE STATE.
(329 SE2d 273)

BEASLEY, Judge.

The defendant appeals his conviction for child molestation, for which he was sentenced to ten years, three to serve in confinement and seven on probation. *Held*:

1. Since the principal eyewitnesses were the defendant and his stepchild whom he allegedly molested, the defense relied heavily upon proof of his good character as testified to by several witnesses.

The defendant filed a written request to give this instruction to the jury: "I charge you that the good character of the accused, Randy Millwood, may alone be sufficient to cause a reasonable doubt in your mind." This requested instruction was not given; instead the trial judge charged as follows: "regardless of whether or not the Defendant has any other defense and regardless of whether or not there is any other evidence in the record upon which a reasonable doubt as to his guilt could be based, proof of good character may of itself constitute such a defense in his behalf, and you, the jury, overriding any amount of positive evidence pointing to the guilt of the Defendant, if you see fit, acquit the Defendant upon *the* reasonable doubt *and* proof of good character generated in your minds . . . " (Emphasis supplied.)

It is now well settled: "[I]t is no longer necessary to give the exact language of requests to charge when the same principles are fairly given to the jury in the general charge of the court." *Shirley v. State*, 245 Ga. 616, 619 (266 SE2d 218) (1980). Therefore, the only issue before us is whether the charge as given correctly instructed the jury regarding the principles of proof of good character.

In consideration of this matter, it should be recognized that "the general rule is that, ' "A mere verbal inaccuracy in a charge, which results from a palpable 'slip of the tongue,' and clearly could not have misled or confused the jury" ' is not reversible error." *Gober v. State*, 247 Ga. 652 (3), 655 (278 SE2d 386) (1981). Here, there was no slip of the tongue since the charge as given precisely tracks the pattern Criminal Jury Instruction. The particular instruction is based on *Loomis v. State*, 78 Ga. App. 336, 358 (51 SE2d 33) (1948). Nevertheless, there is a variance in the pattern instruction and the language of the case. While the pattern charge authorizes acquittal "upon the reasonable doubt *and* proof of good character generated in your minds," (emphasis supplied) the original text of *Loomis v. State*, 78 Ga. App. 336, 358, supra, instructed the jury to acquit "upon the reasonable doubt *that* (emphasis supplied) the proof of good character generated in their minds."

In *Shropshire v. State*, 81 Ga. 589 (8 SE 450) (1888) the court considered a charge which began: " 'You have a right to take into consideration the character of the defendant, in the event you are at all

doubtful as to whether the defendant committed this crime or not. If you have any doubt about it, you may take into consideration the character of the defendants; but if, on the other hand, you believe this case has been made out; if you believe these parties have committed the crime, it makes no matter what their character is, it is your duty to convict them.' " The Supreme Court pointed out: " 'The old rule that evidence of good character of the accused is not to be considered by the jury, unless the other evidence leaves their mind in doubt, is no longer in force.' " The court held that while the jury is authorized to convict where satisfied of defendant's guilt beyond a reasonable doubt regardless of accused's good character; yet the jury should consider proof of good character which may *of itself* create or generate reasonable doubt. Since that holding, the rule has not been otherwise in Georgia. However, the defendant contends that the use of the coordinating conjunction *and*, instead of the subordinating conjunction *that*, in effect returns the law to the status abolished by the *Shropshire* case. In brief, it is urged that the criticized instruction requires the jury to have a reasonable doubt and proof of good character rather than a reasonable doubt engendered or occasioned, or caused, or raised, by proof of good character.

Our analysis leads us to the conclusion that the argument has merit. We recognize that the first part of the charge emphasizes that proof of good character of itself may constitute a defense in the accused's behalf. Nevertheless, this concrete and accurate assertion is then effectively negated by the remaining language. Moreover, the erroneous concept that proof of good character was needed in addition to a reasonable doubt, rather than the proper concept that proof of good character could cause a reasonable doubt, was reinforced. The court further charged: "However now, ladies and gentlemen, proof of good character does not mean that you should acquit the Defendant if you find that the State has proven the Defendant guilty beyond a reasonable doubt." A separate standing of the two propositions, rather than the supportive relationship which the law intends the one to have with respect to the other, was reiterated. Evidence of good character is evidence of a positive fact, not mere makeweight. *Seymour v. State*, 102 Ga. 803 (30 SE 263) (1897). The jury is not schooled in the law and as a body has no idea whether there must be a reasonable doubt and proof of good character in order to acquit or whether good character evidence alone will create the necessary reasonable doubt to exonerate an accused.

It should be observed that this particular instruction was preceded by a definitive instruction on reasonable doubt. What else could the jury assume except there were two factors, "reasonable doubt" and "proof of good character," which in combination authorized the accused's acquittal? The charge as given did not constitute a

lapsus linguae but tended to confuse the very important principle involved. Therefore, we cannot say it was harmless error.

2. During the course of the trial, the child gave an account of her molestation by the defendant. Subsequently, the child's mother testified as to what the child told her after returning home from school. This mother, being at work, had not been home the night before when the child related she was molested nor that morning when the child went to school. This was the first time the child had seen her mother after the offense. When the mother's testimony was elicited, counsel for defendant objected on the grounds that testimony concerning what the child told her mother was hearsay. The trial judge overruled the objection on the ground it was offered in corroboration of the child's testimony.

It is well settled that "A witness' testimony at trial may not be bolstered or corroborated by showing that it is consistent with an out-of-court statement made by that same witness." *Stephens v. State*, 156 Ga. App. 859 (3), 860 (275 SE2d 758) (1980), and cases therein cited.

It is now urged that the child's recounting the events to her mother was part of the res gestae.

Basically, the test as to whether a statement is part of the res gestae encompasses a decision as to whether the declaration accompanied the act or was so connected as to be free from all suspicion of device or afterthought. OCGA § 24-3-3. " '[N]o precise time can be fixed a priori when the res gestae ends, but each case must turn on its own circumstances, the inquiry being rather into events than to the precise time which has elapsed' . . . It is not afterspeech that the law distrusts but afterthought." *Wallace v. State*, 151 Ga. App. 171 (259 SE2d 172) (1979). Where the statement lacks spontaneity but is in the nature of narrations of a past transaction, it does not fall within the res gestae exception. *Parker v. State*, 162 Ga. App. 271, 273 (290 SE2d 518) (1982).

Nevertheless, the Supreme Court, after a thorough examination of the principles and conflicting policy matters involved, announced in *Andrews v. State*, 249 Ga. 223, 228 (290 SE2d 71) (1982); "a trial judge's determination that evidence offered as part of the *res gestae* is sufficiently informative and reliable as to warrant being considered by the jury will not be disturbed on appeal unless that determination is clearly erroneous." The court retreated from a more rigid inquiry to the position that the determination of admissibility as part of res gestae should be left to the sound discretion of the trial court. Id. p. 227, citing *Mitchum v. State*, 11 Ga. 615, 622 (1852), and *Hart v. Powell*, 18 Ga. 635 (1855).

The majority of courts in this country permit testimony by a witness regarding the fact that the victim of a sex crime did report or

relate that an offense occurred, and many of them permit, on various theories, the details of such statement by the victim. See Wigmore on Evidence, Vol. IV, § 1135 et seq.

Under the circumstances here, we find no harmful error in the admission of the mother's testimony and thus the ground complaining thereof was insufficient as another basis for reversal.

3. There was sufficient evidence to meet the test enunciated in *Jackson v.Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), but the jury's deliberations, and so its verdicts, were fatally infected by a materially erroneous instruction as to the law which the jurors were to apply.

*Judgment reversed. Birdsong, P. J., and Carley, J., concur in Divisions 1 and 3 and in the judgment.*

DECIDED MARCH 8, 1985 —
REHEARING DENIED MARCH 22, 1985 — ▮▮▮▮▮▮▮▮

*Lawrence B. Custer, Lawrence E. Burke*, for appellant.
*Darrell E. Wilson, District Attorney, Mickey R. Thacker, Assistant District Attorney*, for appellee.