## 43586. COOK v. THE STATE.
### (353 SE2d 333)

PER CURIAM.

The appellant, Robert R. Cook, was the Judge of the Chatham County Probate Court from 1972 until December 31, 1984. On June 30, 1983, the appellant was indicted for the offenses of theft by taking, theft by conversion, and malpractice in office. On June 27, 1985, a Chatham County jury found him not guilty of three counts of theft by taking, guilty of three counts of theft by conversion, and guilty of seven counts of malpractice in office. His total sentences amount to 6 years imprisonment followed by 5 years on probation and over $7,000 in fines. We affirm.

The evidence presented at trial indicated that money collected for marriage licenses and pistol permits was kept in a cashbox in the probate court's office. The former chief deputy clerk, Wayne Williams, testified that there were no problems until 1977, when the daily deposits he was making were short because of IOUs placed in the box. He testified that the first IOU he saw was issued by the appellant. He also testified that when he asked the appellant to pay the IOUs that sometimes he would pay them and sometimes he would say that he would pay them when he could. The frustration with trying to keep the deposits correct caused Williams to abdicate the duties, and the responsibility landed in the hands of Bonnie Penton, the appellant's secretary.

Problems with the cashbox escalated. Exchanging checks and IOUs for cash in the cashbox became a common practice for the employees of the probate court and other employees around the court, and cash from the cashbox was occasionally used to buy gifts for employees in the office. The funds that had been deposited daily by Williams were deposited on an irregular basis after the responsibility changed hands and an audit showed that there was a shortage of approximately $6,300 in 1980, $9,800 in 1981, and $4,000 from January to September of 1982 in the marriage license account and a shortage of approximately $10,000 in 1980, $14,500 in 1981, and $6,000 for the

period audited in 1982 in the pistol permit account.

The auditor, Donald James, CPA, testified that numerous checks placed in the cashbox were returned for insufficient funds and that several of the appellant's checks were among the returned checks. He also testified that the internal control over the cash, the bank accounts and the whole bookkeeping system was very poor and inadequate for the circumstances. The money deposited by the probate court did not equal the total receipts and there was a shortage for each month covered by the audit.

Williams and others testified that although the problem of money shortages caused by the IOUs was discussed with the appellant, he took no action to correct the situation. One employee, Anna Maria Thomas, testified that sometime in 1979 or 1980 there was a discussion with the appellant about working out a procedure to stop the problems but that the appellant responded that it was the responsibility of the employees to work everything out and to do the best they could.

The appellant's secretary testified that the appellant told her on occasion to hold the checks he had written for the purpose of obtaining cash from the cashbox until he made a deposit. She also testified that the appellant fired her after the problem with the shortages surfaced and that she told one of the investigators that it was her intention to "sink . . . the Judge's ship."

The appellant testified that from the time he first became the probate court judge he relied upon his clerk and secretary to handle the administrative duties of the court. He stated that he relied "completely and totally" on his secretary to keep his checking account in order. He denied that he told her to hold any checks, and stated that the first time he heard about the checks was one night when she informed him that there was a shortage in the pistol permit account. The next day he arranged to meet with his secretary and a friend who was an accountant to determine the extent of the problem. The accountant informed them that there was a large shortage in the account and that there was in excess of $2,000 in checks written by the appellant that were never deposited. The appellant testified that he was shocked to learn about the checks and that he immediately deposited an amount of money equal to the checks in the bank. He then contacted Sheriff Walter Mitchell, requested a complete investigation, and supplied the investigators with all the information they requested.

The state produced 42 of the appellant's checks totalling $2,062, some dating to 1980, that had never been processed through the bank. An accountant testified that the appellant's checking account had sufficient funds to cover all but 4 of the 42 checks at the time they were written.

The appellant also testified that he was unaware of shortages. With regard to the malpractice in office charges that resulted from the shortages in 1980, 1981, and 1982, he stated that he depended solely on his staff to do the ledger books and that he accepted what they did as "being absolutely the truth."

The evidence showed that the appellant requested and was given a $1,000 advance for a trip to California, and that the appellant did not turn in a travel expense form as required. The appellant testified that the trip cost more than $1,000, that in all the trips he had taken before he had never been charged with failure to turn in the proper reports, and that the receipts for the trip were all given to his secretary and that one receipt was either "lost by her or misplaced." The appellant's secretary testified that the appellant lost the receipt.

A state's witness testified that the $1,000 check was negotiated at a local bank. The appellant received $700 in cash and deposited $300 into his checking account. One of the state's exhibits shows that the $300 was needed to cover shortages in the appellant's bank account.

There was also evidence to show that the appellant failed to appoint the county administrator, as required by law, to handle two estates exceeding $2,500.

The appellant relied heavily upon his good character as a defense. He testified at length about his community involvement and activities within the legal community, and he also sought to prove his character through other witnesses. After the second character witness testified, the court asked appellant's counsel how many character witnesses he had. He indicated that there were approximately 50 witnesses who were ready to testify as to the appellant's good character, but that if after they put up ten he would ask the District Attorney to stipulate as to the appellant's good character and allow the other names to be read to the jury. The court ruled that the appellant could pick seven to testify and that the state agreed that the names of the other witnesses could be read to the jury.

The appellant also sought to show through the testimony of the character witnesses that he did not lead an extravagant lifestyle, but the prosecution objected on the ground that it was not relevant. The trial court sustained the objection and the appellant was not allowed to introduce evidence showing that the appellant did not lead an extravagant lifestyle.

1. The appellant asserts that the trial court erred in refusing to give his requested charge and in giving the following charge on good character: "I further charge you, ladies and gentlemen, that regardless of whether or not the defendant has any other defense, and you have heard his testimony and the defense offered, and regardless of whether or not there is any other evidence in the record upon which a reasonable doubt as to his guilt could be based, proof of good charac-

ter may of itself constitute such a defense in his behalf, and you, the jury overriding any amount of positive evidence pointing to the guilt of the defendant may, if you see fit, acquit the defendant upon the reasonable doubt *and* proof of good character generated in your minds." (Emphasis supplied.)[1]

In *Keller v. State*, 245 Ga. 522 (265 SE2d 813) (1980), this court considered Keller's challenge to a certain portion of a charge on good character. Although we did not examine the pattern charge for errors, we recommended its use because the pattern charge did not include the statement Keller contended was erroneous.

In *Millwood v. State*, 174 Ga. App. 113 (329 SE2d 273) (1985), the Court of Appeals was faced with a challenge to the recommended pattern charge. The Court of Appeals determined that the instruction which originated in *Loomis v. State*, 78 Ga. App. 336, 358 (51 SE2d 33) (1948), was changed when it was copied in the Criminal Jury Instruction book. The pattern charge authorized acquittal "upon the reasonable doubt *and* proof of good character generated in your minds," whereas the instruction in *Loomis*, supra, authorized acquittal "upon the reasonable doubt *that* proof of good character generated in your minds." The Court of Appeals agreed with Millwood "that the use of the coordinating conjunction *and*, instead of the subordinating conjunction *that*, in effect returns the law to the status abolished by the *Shropshire* case. . . . [T]he criticized instruction requires the jury to have a reasonable doubt *and* proof of good character rather than a reasonable doubt engendered or occasioned, or caused, or raised, by proof of good character." (Emphasis supplied.) *Millwood*, supra at p. 114.

The order entered pursuant to the motion for new trial indicates that the trial court read *Millwood*, supra, and *Keller*, supra, to be in conflict with one another and that this court failed to resolve the conflict when it refused to grant a writ of certiorari filed in *Millwood*, supra.

We find no conflict between *Millwood*, supra, and *Keller*, supra. The court in *Keller*, supra, did recommend the use of the pattern jury charge, but it did not consider a challenge to the wording of the charge. The court in *Millwood*, supra, had before it a challenge to the wording of the charge and it found that the wording was erroneous and did not correctly instruct the jury regarding the principles of proof of good character.

Viewing the charge as a whole and the evidence presented to the jury, we find that it is highly probable that the error in the charge as

---

[1] Suggested Pattern Jury Instructions, Vol. 2, Criminal Cases, p. 47, provides a new jury instruction on good character. It may also be found in Justice Gregory's dissent in *State v. Braddy*, 254 Ga. 366, 369 (330 SE2d 338) (1985).

given did not contribute to the verdict. *Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869) (1976).

2. Inasmuch as the appellant was acquitted on the theft by taking charges and the total amount of the checks involved in the theft by conversion was only a little over $2,000, we find that the error committed by the trial court in refusing to allow the appellant to present evidence showing his lack of an extravagant lifestyle to be harmless error.

3. Although no exact punishment is provided in the malpractice statute, OCGA § 45-11-1, OCGA § 16-1-10 provides that in a case in which no punishment is provided, the offense shall be punished as a misdemeanor. We find no unconstitutional vagueness, indefiniteness or uncertainty, and thus no error.

4. Reviewing the evidence in the light most favorable to the prosecution we find that a rational trier of fact could have found the essential elements of theft by conversion and malpractice in office beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) and *Humphrey v. State,* 252 Ga. 525, 527 (314 SE2d 436) (1984).

5. We find no errors in the appellant's remaining enumerations.

*Judgment affirmed. All the Justices concur, except Clarke, P. J., Smith and Bell, JJ., who dissent.*

SMITH, Justice, dissenting.

The last statement of the law charged to the jury ended with the charge that they could "acquit the defendant upon the reasonable doubt *and* proof of good character generated in your minds." How, in light of the fact that the appellant relied heavily on his good character as a defense, can this erroneous instruction be harmless?

DECIDED MARCH 3, 1987 —
RECONSIDERATION DENIED MARCH 24, 1987.

*Jackson & Schiavone, G. Terry Jackson, Michael G. Schiavone,* for appellant.

*Spencer Lawton, Jr., District Attorney,* for appellee.