## 75465. COOP et al. v. THE STATE.
### (367 SE2d 836)

BEASLEY, Judge.

Co-defendants Coop and Coleman appeal the denial of their motion for new trial following their convictions and sentences for trafficking in marijuana, OCGA § 16-13-31 (c).

The evidence construed so as to uphold the verdict, *Rhodes v. State*, 168 Ga. App. 10, 11 (1) (308 SE2d 33) (1983), showed the following. On May 17, 1986, Oklahoma residents Coleman and Coop flew from Tulsa to Miami, Florida, changing planes in Memphis, Tennessee. The tickets were one-way and paid for in cash. At 4:10 a.m. on May 20, a Georgia State Patrol trooper stopped a car for speeding on Interstate 75 in Whitfield County. Coleman was driving and Coop was the passenger. The car rental agreement indicated that the car had been rented through an agency in Ft. Lauderdale, Florida, by a Phyllis Elias for a twenty-four hour period and limited to use in Florida by Elias.

Based on his experience and training in drug interdiction, the trooper became suspicious of Coleman and Coop during the traffic stop. He requested that Coleman give consent to search the vehicle, and Coleman gave verbal consent and appeared to read the written waiver form stating his rights but refused to sign it. The search produced wet and sandy tennis shoes, blue jeans and t-shirt from the backseat floorboard, an airline ticket receipt for a one-way flight to Miami with a change in Memphis on May 17, in the name of "Louie Murphy," and two wet and sandy bales of what tested as 112 pounds of marijuana. The marijuana was found when the trooper raised the bottom part of the backseat, smelled a strong odor of marijuana, eventually removed the backseat, saw a green duffel bag in the trunk, and opened it.

1. Appellants maintain that the trial court erred in failing to grant their motion to suppress because a) the trooper's stop of their car was pretextual in that the trooper's motive was not to give them a warning ticket for speeding but was really subterfuge to detain them

so that he could investigate whether or not the vehicle contained contraband; b) the extent of the stop far exceeded the permissible scope allowed for the issuance of a "state patrol courtesy warning" for speeding; c) the evidence of the stop predicated upon the use of radar by the trooper was not admissible as the State failed to present the necessary foundation to support the radar test results; d) there was no valid consent to search given by Coleman.

a) Pretextual stop. The trooper testified that he stopped defendants' car because it was exceeding the speed limit, a violation of OCGA § 40-6-181 (b) (2). Vehicles which are involved in traffic offenses are routinely stopped by the state patrol. Because the trooper who spotted the traffic violation by defendants was trained to be vigilant for drug traffickers would not alter his authority to make a routine traffic stop. See *Eisenberger v. State*, 177 Ga. App. 673, 674 (2) (340 SE2d 232) (1986); *State v. High*, 145 Ga. App. 772, 773 (2) (244 SE2d 888) (1978).

Appellants cite as supportive recent federal cases involving traffic stops based upon a drug courier profile. This case differs because the initial stop was based on an observed traffic violation. They also contend that it is further evidence of pretext that the trooper radioed for a back-up unit prior to asking for and receiving consent to search the car. This precaution came after the trooper observed circumstances raising his suspicions that drugs might be concealed in the car.

b) Extent of stop. Appellants argue that the trooper had the right pursuant to OCGA § 40-5-29 to ask Coleman to display his driver's license but that he did not have the right to demand the vehicle's registration or in this case its rental documents because of the provisions of OCGA § 40-2-90 (b) (2), so that detention was unreasonable under *Florida v. Royer*, 460 U. S. 491, 500 (103 SC 1319, 75 LE2d 229) (1983). By its terms, OCGA § 40-2-90 (b) (2) gives visitors to the state the right to use and operate motor vehicles on the public streets and highways for pleasure purposes only for 90 days without registering the vehicle. This does not restrict a law enforcement officer from performing his duty when stopping a visiting motorist for a traffic violation. The tag number indicated it was a rental car.

c) Radar. Appellants argue that the State failed to present the necessary foundation to support the radar test results so as to preclude evidence of the stop predicated on radar use. It is true that the State's evidence did not satisfy the requirements of *Wiggins v. State*, 249 Ga. 302, 304 (2) (290 SE2d 427) (1982) for the admissibility of evidence of speed gained by a state law enforcement officer through use of radar, and that failure to meet the requirements would render inadmissible the evidence of speed gained by the use of the radar. But the issue of speeding was before the court on the motion to suppress only on the question of legitimacy of the initial stop of defendants'

car and not on the substantive offense of speeding, as it was in *Wiggins*. Moreover, evidence of speeding as testified to by the trooper was gleaned from the trooper's visual observation of the vehicle's motion, as well.

d) Consent to search. Appellants ask the court to follow the authority of another jurisdiction and "[fashion] an exclusionary rule as to the entirety of State's testimony concerning the admissibility of an unrecorded consent that is controverted." We decline to do so. For one thing, that relates to in-custody interrogations, not roadside consents to search. We conclude instead that "[t]he trial court was authorized by the evidence to find that [Coleman] consented to the search of the automobile freely and voluntarily and not as the result of coercion, duress, or deceit. [Cits.]" *Smith v. State*, 165 Ga. App. 333, 334 (2) (299 SE2d 891) (1983).

2. Appellants contend that the trial court erred in refusing to grant their motion for a directed verdict of acquittal and their motion for new trial on the basis that the State failed to prove that each or both of them had actual possession of the contraband. Each admitted driving the vehicle at alternate times.

"The 'actual possession' required by OCGA § 16-13-31 to authorize a conviction for trafficking refers not merely to physical custody but refers to actual active participation in the possession of such substances so as to be a party to the crime of trafficking." *Barrett v. State*, 183 Ga. App. 729, 736 (2) (360 SE2d 400) (1987); *Evans v. State*, 167 Ga. App. 396 (1) (306 SE2d 691) (1983); *Lockwood v. State*, 184 Ga. App. 262, 265 (5) (361 SE2d 195) (1987), rev'd on other grounds, 257 Ga. 796 (364 SE2d 574) (1988). The evidence described above was sufficient to enable any rational trier of fact to find that both defendants had such possession of the 112 pounds of marijuana beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Appellants also contend that they were entitled to a directed verdict of acquittal because the State's evidence failed to prove that they were in actual possession of more than 100 pounds of marijuana as is required under OCGA § 16-13-31 (c).

A forensic chemist of the drug identification section of the Georgia Crime Laboratory testified that he performed the appropriate tests and determined that the substance found was marijuana and that he weighed the two compressed bales without the duffel bag and found one to weigh 39 pounds and the other 73 pounds for a total of 112 pounds. Though defendants at trial attempted to raise the spectre that the inside of the bales might have contained a substance other than marijuana since the chemist's assessment of the composition of the bales was made from samples of both and not from a testing of every part of each bale, there was no evidence that the bales

were constituted of anything other than marijuana.

4. Lastly, appellants challenge the court's refusing to give their requested charge on character evidence and in lieu thereof giving a confusing and burden-shifting charge.

The request provided: "regardless of whether or not the defendants have any other defense, and regardless of whether or not there is any other evidence in the record upon which a reasonable doubt as to their guilt could be based, proof of good character may of itself constitute such a defense in their behalf, and you, the jury, overriding any amount of positive evidence pointing to the guilt of the defendants may, if you see fit, acquit the defendants upon the reasonable doubt and proof of good character generated in your minds, . . ." This is an inaccurate statement of law because good character does not provide a substantive defense but only a substantive fact. *Edwards v. State*, 255 Ga. 149, 150 (1) (335 SE2d 869) (1985). See also *Cook v. State*, 256 Ga. 808, 810 (1) (353 SE2d 333) (1987).

The court did charge that "in criminal cases the Defendant is allowed, if he sees fit, to offer evidence as to his general good character; and when such evidence is offered, it is the duty of the Jury to take that testimony, along with all other testimony in the case in determining the guilt or the innocence of the Defendant. Good character is a positive, substantive fact and may of itself be sufficient to generate in the minds of a Jury a reasonable doubt as to the guilt of the Defendant. It is the duty of the Jury to take any evidence of general good character, along with all other evidence in the case, and if, in doing so, the Jury should entertain a reasonable doubt as to the guilt of the Defendant, they should acquit. Nevertheless, if the Jury should believe the Defendant guilty beyond a reasonable doubt, it would be their duty to convict, notwithstanding the evidence as to the general good character." This was a proper charge, not confusing or burden-shifting. Id.

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED MARCH 11, 1988 —
REHEARING DENIED MARCH 29, 1988 —

*E. Neil Wester III*, for appellants.

*Jack O. Partain III, District Attorney, Kermit D. McManus, Assistant District Attorney*, for appellee.