### 77646. MALLARINO v. THE STATE.
(379 SE2d 210)

BIRDSONG, Judge.

Guillermo Mallarino appeals his conviction and sentencing for trafficking in cocaine in that he did actually possess and bring into the State of Georgia an amount of cocaine greater than 28 grams.

Appellant and a male passenger were stopped when appellant was observed driving 65 mph on Interstate 75. The speed limit was 55 mph. The stop and subsequent search of appellant's car was video-taped. Following the stop, Trooper Ralston initiated a driver's license check of the appellant and an "EPIC check" of files pertaining to immigration on both men. A warning was issued for the speeding violation. Based on responses that he obtained from the two men, coupled with certain other factors, Trooper Ralston became suspicious that the men were involved in some other activity besides speeding. Trooper Ralston then requested the appellant to consent to a search of his car after allowing the appellant to read and repeating to him the information contained in a consent to search form. The appellant was from Columbia and spoke English well. Appellant had five years of college in Columbia and stated that he understood English and did not need to use the Spanish version of the consent to search form. The appellant signed the consent to search form, gave his consent to the search, and did not thereafter object to either the scope or duration of the search. Upon opening the car trunk, Trooper Ralston dis-

covered a secret compartment behind the rear seat. Packages of cocaine were found in this compartment. The appellant and his companion were placed under arrest and turned over to the local sheriff's department for further investigation. From the time of the stop to the search over 30 minutes elapsed, and approximately one and one-half hours elapsed from the time of the stop to appellant's release to the custody of the sheriff's department. *Held*:

1. Appellant asserts that the trial court erred in sentencing him to 25 years confinement and a fine of $500,000, pursuant to OCGA § 16-13-31 (a) (1) (C), since the indictment averred only that appellant possessed and brought into the state cocaine in an amount "greater than 28 grams" and the jury found him guilty in accordance with the indictment. We agree.

The trial record clearly shows that the trial judge believed he was required to impose, as a minimum mandatory sentence, the minimum mandatory sentence of 25 years imprisonment and a fine of $500,000. This is the minimum mandatory sentence to be imposed where the offender has been convicted of trafficking in cocaine and the quantity of cocaine or the cocaine mixture involved and of which the offender has been duly convicted is 400 grams or more. OCGA § 16-13-31 (a) (1) (C). However, when the offender is convicted of trafficking in cocaine and the quantity of cocaine or the cocaine mixture involved and of which he has been convicted of possessing is only 28 grams or more, but less than 200 grams, the mandatory minimum sentence is a term of 10 years imprisonment and a fine of $100,000. OCGA § 16-13-31 (a) (1) (A). In such cases, it is that quantity of drugs averred in the indictment of which the offender has been *convicted*, rather than the amount of drugs which the evidence establishes that the offender possessed in excess of the amount averred in the indictment, that controls in determining which mandatory minimum sentence is operative under OCGA § 16-13-31 (a).

This statutory interpretation is consistent with the general rule that "an accused cannot receive a sentence greater than that prescribed by law for the crime for which he was indicted and convicted." *Riggins v. Stynchcombe*, 231 Ga. 589, 592 (203 SE2d 208). Moreover, the legislative history of OCGA § 16-13-31 reflects that in 1985 the statute was amended in part "so as to provide for mandatory minimum penalties *upon conviction for* certain violations. . . ." (Emphasis supplied.) Ga. L. 1985, p. 552.

In this case, the indictment averment of which the appellant was convicted was for trafficking in cocaine by actually possessing and bringing into the state an amount of cocaine "greater than 28 grams." It is impossible to determine from the announced verdict the maximum amount of cocaine which the jury found the appellant guilty of possessing, although the minimum amount of which the accused was

both indicted and convicted of possessing was more than 28 grams. We will not speculate as to what was in the minds of the jury when they announced their verdict. Due process considerations dictate that the minimum permissible sentence for this offense is controlled by OCGA § 16-13-31 (a) (1) (A). Cf. *Riggins*, supra at 592.

This error, although prejudicial, can be cured by a sentencing re-hearing. In such proceedings, the trial judge shall consider as operative the mandatory minimum sentence requirements of OCGA § 16-13-31 (a) (1) (A), and the maximum sentence as that authorized by OCGA § 16-13-31 (f). See generally *Recoba v. State*, 179 Ga. App. 31 (4) (345 SE2d 81).

2. Appellant's second and third enumerations of error are that the trial court erred in overruling his motion to suppress and in holding that appellant voluntarily consented to the search of his vehicle, respectively.

In ruling on appellant's suppression motion, the trial court found inter alia that Trooper Ralston stopped appellant's vehicle for speeding; that Trooper Ralston subsequently gave appellant a warning ticket and asked for consent to search the car; that appellant did not initially understand the trooper's request, but he did eventually comprehend what the trooper wanted and consented for him to search the car; that a hidden compartment was discovered as soon as the vehicle trunk was opened; and, that the trooper upon examination was able to detect packages in the trunk similar to packages of cocaine which he had found in other cases of this nature. The trial court's decision on questions of fact and credibility of witnesses at a suppression hearing must be accepted unless found to be clearly erroneous. *Spencer v. State*, 186 Ga. App. 54, 55 (366 SE2d 390); *Lockwood v. State*, 184 Ga. App. 262 (1) (361 SE2d 195); see *Borda v. State*, 187 Ga. App. 49, 50 (369 SE2d 327). There exists no basis in this record to reverse any of the findings of fact or credibility determinations of the trial court.

Appellant's car was lawfully stopped for speeding. As Trooper Ralston observed appellant violating the traffic laws by speeding, he had probable cause to stop the vehicle and investigate the incident. *Beguiristain v. State*, 187 Ga. App. 164, 165 (369 SE2d 774); *Steward v. State*, 182 Ga. App. 659 (1) (356 SE2d 890), cert. den.

Appellant asserts that the circumstances of this case establish that the stop for a traffic violation was in fact a pretextual stop for a drug investigation and thus an unreasonable seizure of appellant. We disagree. Merely that Trooper Ralston had received substantial training in interdicting drug couriers and was vigilant for their use of the state's highways, "would not alter his authority to make a routine traffic stop." *Coop v. State*, 186 Ga. App. 578 (1) (a) (367 SE2d 836). The trial record does not support appellant's claims of subterfuge; Trooper Ralston testified that he stopped appellant's vehicle because

it was speeding. Compare *United States v. Hardy*, 855 F2d 753 (11th Cir. 1988). The trial court perforce of its rulings found this testimony credible and we will not reverse the trial court's determinations of credibility unless they clearly are erroneous. *Spencer*, supra at 55.

Appellant maintains that after the stop of his car he was subjected to illegal detention while Trooper Ralston conducted an investigation based on an unarticulable hunch. Even in the absence of probable cause, a police officer "may stop an automobile and conduct a limited investigative inquiry of its occupants . . . if he has reasonable grounds for such action—a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." *State v. Misuraca*, 157 Ga. App. 361, 364 (276 SE2d 679), U. S. cert. den. During this detention, the police, for example, may attempt to determine the person's identity, *Misuraca*, supra at 365, and ask for a display of driver's license and vehicle registration. *Coop*, supra at 579. Trooper Ralston's initial questioning of appellant and appellant's passenger and his examination of appellant's driver's license and vehicle registration caused him to form a reasonable and articulable suspicion that appellant and the passenger may have been involved in other criminal activity, including possible immigration violations. Under these circumstances, Trooper Ralston could *continue* to detain temporarily appellant and his passenger "to maintain the status quo momentarily while obtaining more information." *Eisenberger v. State*, 177 Ga. App. 673, 675 (340 SE2d 232); *Misuraca*, supra at 365. Considering the circumstances, we find that Trooper Ralston acted reasonably in his detention of the appellant. In this regard, as soon as Trooper Ralston had completed his inquiry into the status of appellant's driver's license and vehicle registration, he issued a warning ticket for speeding and requested permission to search the vehicle.

The United States Supreme Court has adopted a dual inquiry for evaluating the reasonableness of an investigative stop, to-wit: " 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.' " *United States v. Sharpe*, 470 U. S. 675, 682 (105 SC 1568, 84 LE2d 605). The second part of this inquiry includes a consideration of the requirement for brevity. Id. at 683. In assessing the effect of the length of the detention, it must be determined whether the police diligently pursued their investigation. Id. at 685. No "bright line" or rigid time limitation is imposed, and "the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes" is to be emphasized. Id. In assessing the reasonableness of the length of detention, it is appropriate to examine "whether the police diligently pursued a means of investigation that

was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." Id. at 686. A key consideration is whether the police "are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." Id. At the onset we note that Trooper Ralston's stop of appellant was based on *probable cause*, as he observed appellant committing a traffic violation and initially stopped and detained him for this reason. The fact that this was a probable cause stop is a *significant factor* that weighs heavily in the police's favor. Thereafter, Trooper Ralston was confronted with a swiftly developing situation. He was confronted with the passenger's initial admission that he was in the country illegally, and apparent discrepancies in the stories being told by the two men in the car. Further, Trooper Ralston was faced unexpectedly with problems in the state police's computer system and had to go through the Tennessee highway patrol to obtain information "pertaining to the registration and the driver's license" of appellant. He also was awaiting response to an EPIC check of the "files pertaining to immigration" on both men. After receiving consent to search the vehicle, Trooper Ralston had to await the arrival of a back-up officer and ultimately was compelled to force access to a secret compartment in the trunk where the cocaine was found. Applying the *Sharpe* brevity test to the facts of this case, we find that Trooper Ralston's detention of appellant for the critical period of approximately 33 minutes from time of stop to time of signing of the consent to search and for a total period of approximately one and one-half hours from time of stop until appellant was turned over to local police authorities was not unreasonable within the meaning of the Fourth Amendment. Compare *United States v. Hardy*, supra at 761 (investigative stop of approximately 50 minutes duration).

Appellant next contends that the consent to search was not voluntary and was the product of duress and coercion. It is well-settled that the prosecution has the "burden of proving that the consent was, in fact, freely and voluntarily given." *Schneckloth v. Bustamonte*, 412 U. S. 218, 222 (93 SC 2041, 36 LE2d 854); *Borda*, supra at 50. In determining whether the consent was voluntary, we will look to "the totality of all the surrounding circumstances." *Schneckloth*, supra at 226; *Borda*, supra at 50. These factors include the fluency of the consenting person regarding the language being used by the police, the age, education and intelligence of the consenting person, the length of and basis for the duration of detention until the consent was obtained, whether the accused was advised of his relevant constitutional rights including his right to refuse to consent, the prolonged nature and intensity of any questioning, the use of threats or physical punishment, and the psychological impact of all these factors on the consenting person. See *Spencer*, supra at 45-55. No single factor is con-

trolling. Applying this test to the attendant circumstances and in light of the prosecution's burden of proof, we find no error in the trial court's conclusion that appellant's consent was voluntary and that he understood the significance thereof. Once a voluntary consent is legally obtained, it continues until it either is revoked or withdrawn. *Borda*, supra at 50; *Beguiristain*, supra at 165. Consent was not thereafter withdrawn in this case.

Appellant's other assertions and his second and third enumerations of error are without merit.

3. As there has been no argument or citation of authority by appellant regarding his fourth enumeration of error, that the trial court erred in denying his motion for new trial, this ground is deemed abandoned. *Melton v. Gilleland & Sons*, 176 Ga. App. 390 (1) (336 SE2d 315); Court of Appeals Rule 15 (c) (2).

*Judgment of conviction affirmed; sentence reversed and case remanded for rehearing on sentence. Banke, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 21, 1989.

*Glenn Zell*, for appellant.

*Jack O. Partain III, District Attorney, Lee R. Taylor, Todd L. Ray, Assistant District Attorneys*, for appellee.