S93G1057. TATE v. THE STATE.
(440 SE2d 646)

FLETCHER, Justice.

At approximately 1:00 a.m. on October 3, 1992, Tate was traveling north on I-75. As he crossed the Cobb/Cherokee County line into Cherokee County he passed a Cherokee County Sheriff's deputy who was parked alongside the interstate. The deputy testified that Tate's vehicle appeared to have no tag but, as he caught up to the vehicle and pulled up behind, he discovered that the vehicle had a tag but no tag light. The deputy further testified that having pulled to within 50 to 20 feet of Tate's vehicle he observed the vehicle weave over the lane lines. The deputy then stopped Tate (according to the deputy, to investigate Tate's erratic driving), questioned him and, because Tate acted nervous attempted to obtain consent to search his vehicle. Tate initially gave consent to search, then withdrew that consent before the deputy began his search. At this point the deputy radioed for a narcotics dog to sniff the vehicle. Overhearing this communication, Tate apparently informed the officer that there were drugs in the vehicle which the deputy retrieved. Tate was arrested and charged with a violation of the Georgia Controlled Substances Act.

Tate filed a motion to suppress contending that the seizure was in violation of his rights under the Fourth Amendment to the U. S. Constitution. After an evidentiary hearing, the trial court found that the stop "would not have been made by a reasonable officer in the absence of an ulterior motive to interdict drug trafficking on Interstate 75."

The state appealed the trial court's order granting Tate's motion to suppress, arguing that the trial court's findings of fact were inconsistent with its conclusion of law that the seizure was illegal. The state claimed that the trial court found, as a matter of fact, that the deputy stopped Tate because he had committed a traffic violation, thus making any ulterior motive irrelevant since the officer had a legitimate purpose in making the stop. The Court of Appeals adopted the state's argument. *State v. Tate*, 208 Ga. App. 117 (430 SE2d 9)

54

(1993). Because we cannot agree that this interpretation reflects the actual findings made by the trial court, we reverse.

1. When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge "hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it." *State v. Swift*, 232 Ga. 535, 536 (207 SE2d 459) (1974).

Second, the trial court's decision with regard to "questions of fact and *credibility* . . . must be accepted unless clearly erroneous." *Woodruff v. State*, 233 Ga. 840, 844 (213 SE2d 689) (1975). (Emphasis supplied.) Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. *Anderson v. State*, 133 Ga. App. 45, 47 (209 SE2d 665) (1974). On numerous occasions the appellate courts of this state have invoked these three principles to affirm trial court rulings that upheld the validity of seizures.[1] These same principles of law apply equally to trial court rulings that are in favor of the defendant and their application to this trial court's order would demand that the court's order be affirmed.

2. The Court of Appeals' decision is predicated upon the conclusion that the trial court "found" that Tate committed traffic violations in the presence of the deputy.[2] This conclusion, that the trial court found, as a matter of fact, that Tate committed traffic violations is not supported by the language of the trial court's order when reviewed in the context of the three principles enumerated in Division 1.[3]

The trial court filed a nine-page order concerning Tate's motion to suppress. This order is divided into three sections headed: "Facts," "Conclusions of Law" and "Judgment." The Court of Appeals' opinion quotes the entire section headed "Facts," assumes that all of the *testimony* quoted therein is true and concludes that the deputy

[1] See, e.g., *Johnson v. State*, 233 Ga. 58 (209 SE2d 629) (1974); *Huff v. State*, 205 Ga. App. 557 (422 SE2d 664) (1992); *Merriman v. State*, 201 Ga. App. 817 (412 SE2d 598) (1991); *Hamil v. State*, 198 Ga. App. 869 (403 SE2d 828) (1991); *Mallarino v. State*, 190 Ga. App. 398 (379 SE2d 210) (1989); *Watson v. State*, 190 Ga. App. 696 (379 SE2d 817) (1989); *O'Keefe v. State*, 189 Ga. App. 519 (376 SE2d 406) (1988) and *Lockwood v. State*, 184 Ga. App. 262 (361 SE2d 195) (1987).

[2] "We must conclude that, based on all the facts as found by the trial court, a reasonable officer would have made the stop. . . ." *Tate*, 208 Ga. App. at 121.

[3] In fact, the trial court addresses this claim when made by the state and concludes that whether or not the officer observed a traffic violation was an issue of whether the officer's testimony was credible.

stopped Tate because he was violating traffic laws in the deputy's presence.

It is clear from reading the *entire* order that the testimony summarized in the "Facts" section does not constitute the actual and complete findings of fact by the trial judge. The portion of the trial court's order headed "Facts" is more a summary of the testimony provided at the hearing than "findings of fact" by the trial court. This conclusion is supported by the document itself which specifically addresses the conclusion urged by the state and accepted by the Court of Appeals. In the "Conclusions of Law" section of the opinion, the trial court states:

> The state contends the stop of the Defendant's vehicle occurred because [the deputy] observed a traffic violation and not because of any improper or invalid reason to obtain evidence of drug trafficking and was not based on a "drug courier profile." However, there is substantial evidence that [the deputy had] been trained in identifying the characteristics of a drug courier and that a conscious decision to focus on a relatively short strip of I-75 in Cherokee County had been made by the officer's superiors. Under such circumstances, the "issue is whether the officer's testimony was credible or whether the circumstantial evidence as to the drug courier profile predominated." *O'Keefe v. State,* 189 Ga. App. 519, 522 (376 SE2d 406) (1988).

After identifying *credibility* as the key issue with regard to whether the stop was made because of traffic violations or because the vehicle fit the drug courier profile, the trial court identified factual inconsistencies in the deputy's testimony in the "Conclusions of Law" portion of the order. These facts are not included in the "Fact" portion of the order[4] and they contradict portions of the testimony contained therein. A reviewing court should not interpret an opinion in such a way as to make it internally inconsistent and it is unlikely that the trial court would make conflicting findings of fact. Therefore, it follows that the inclusion of these contradictory facts by the trial court casts grave doubt on the state's contention that the "Facts" section is a list of the court's findings of fact and supports the conclusion that this section merely summarizes the testimony.

The trial court notes that the two officers assigned to I-75 by the Cherokee County Sheriff's Department are the two most trained in drug intervention and the officers were assigned to patrol that area despite the fact that I-75 only traverses 2.2 miles of Cherokee County.

---

[4] And thus are not mentioned in the Court of Appeals' decision.

Moreover, despite testimony quoted in the "Facts" section that the deputy was "supposedly" assigned to traffic enforcement, the court notes that the only patrols on I-75 were late at night and early morning when traffic is lightest, and the deputy did not even have permission to use radar in his patrol unit. The court also found that Tate did not start weaving until after the deputy had pulled close enough to observe Tate's tag, that the deputy began questioning Tate about drugs in order to build "articulable suspicion" that Tate was a drug courier before subjecting him to field sobriety tests and that up until the deputy requested permission to search the vehicle, he did not believe that he had "probable cause to hold or detain [Tate]."

Having identified credibility as the key issue with regard to the legitimacy of the seizure and having identified inconsistencies in the deputy's testimony, the trial court concludes that the "*evidence* in this case supports the conclusion that the conduct of these officers is part of a cleverly conceived plan to interdict illegal drugs artfully executed in the guise of traffic enforcement" and that "upon consideration of the totality of the circumstances" the stop was pretextual. (Emphasis supplied.) This conclusion clearly indicates that the trial court resolved the credibility issue against the deputy and found that the traffic violation did not occur.

3. The trial court addressed the question of whether the deputy stopped Tate for a traffic violation or to investigate a potential traffic violation, and stated that whether he did or did not was a question of credibility. The trial court then resolved the issue adverse to the deputy's testimony. Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony. *State v. Betsill*, 144 Ga. App. 267 (240 SE2d 781) (1977).[5]

We conclude from reading the entire order that the trial court

---

[5] We note that a rational trier of fact can choose to reject even "undisputed" testimony if that factfinder believes that witness' testimony to be unreliable. Factors such as demeanor, contradictory or inconsistent statements and evidence that an officer had "ulterior motives" can all lead a finder of fact to disregard testimony by an officer that an accused was violating the law. The deputy's claim that he was patrolling I-75 looking for traffic violators is certainly contradicted by "circumstances inconsistent with the truth" (*Chaffin v. Community Loan &c. Co.*, 67 Ga. App. 410 (1) (20 SE2d 435) (1942)) such as the times the officer patrolled, the short 2.2 mile stretch of highway, the lack of traffic enforcement equipment (radar), the extensive drug enforcement training and emphasis on interdiction by the officer's superiors. A rational trier of fact could believe that this testimony was not truthful and that the officer was claiming that Tate broke the law in order to justify an illegal stop. There was sufficient "inherently improbable, incredible or unreasonable testimony" in this case to justify the court's evaluation of the officer's credibility. *Nesbit v. Nesbit*, 241 Ga. 351, 352 (245 SE2d 303) (1978).

chose not to believe the deputy's testimony that Tate committed a traffic violation. Such a conclusion is consistent with the way reviewing courts interpret judicial orders. For example, in *Barnett v. State*, 204 Ga. App. 491 (420 SE2d 43) (1992), the Court of Appeals was faced with the same question of how to determine whether the trial court found credible the testimony of an officer that he had stopped a vehicle for a traffic violation. The Court of Appeals held that the answer to this question could be found by looking at how the trial court ultimately ruled:

> [The officer] testified [that] he stopped the vehicle because of its inoperative headlight. The trial court perforce of its ruling on the suppression motion found this testimony credible, and we will not reverse the trial court's determinations of credibility unless they are clearly erroneous.

*Barnett*, 204 Ga. App. at 492.

As in *Barnett*, the deputy who stopped Tate testified that he made the stop to investigate a traffic violation. The trial court, "perforce of its ruling on the suppression motion,"[6] found that the deputy's testimony was not credible.

Applying the principles enumerated in Division 1, construing the evidence in the light most favorable to upholding the trial court's findings and judgment (*Anderson*, supra), we are constrained to conclude that the trial court found that there was evidence that the deputy's testimony was not credible. The trial judge's specific reference to the deputy's contradictory testimony, coupled with the opportunity to observe his demeanor, is sufficient evidence to support the judge's conclusions and the reviewing court should not disturb those findings. *Swift*, supra. Finally, the trial court's determinations with regard to facts and especially with regard to credibility are supported by the evidence and we must accept them as they are not clearly erroneous. *Woodruff*, supra.

Since the trial court's factual determination that the deputy's testimony that he stopped Tate for a valid purpose was not credible, and since the conclusion regarding credibility is supported by the evidence and is not clearly erroneous, our review of the law applied to these facts supports the trial court's legal determination that the stop was pretextual and would not have been made by a reasonable officer in the absence of the invalid purpose. *United States v. Smith*, 799 F2d 704, 709 (11th Cir. 1986). Therefore, we reverse the Court of Appeals' opinion.

---

[6] Unlike *Barnett*, the trial court here also made specific findings that the contradictory evidence did not support the deputy's claims.

58

*Judgment reversed. All the Justices concur, except Hunt, P. J., and Carley, J., who dissent.*

CARLEY, Justice, dissenting.

In my opinion, the Court of Appeals correctly reversed the trial court's grant of appellant's motion to suppress. I must, therefore, respectfully dissent to the majority's reversal of the judgment of the Court of Appeals.

The *only* witnesses who testified at the motion to suppress hearing were Officer Shields who made the initial stop of appellant's vehicle and another officer who subsequently arrived on the scene in response to Officer Shields' radioed request for assistance. Accordingly, it is *undisputed* that appellant was committing at least two traffic offenses in the presence of Officer Shields. Appellant was weaving and he had no tag light on his vehicle. It is *also* undisputed that, based upon appellant's erratic driving, he was possibly committing the offense of driving under the influence. Under these undisputed circumstances, it would have been a dereliction of Officer Shields' duty to have failed to stop appellant to conduct a brief investigation and the Court of Appeals correctly so held: " '[T]he patrol officers of Georgia are charged with enforcing Georgia's traffic laws, and this court can presume no less than that a patrol officer would obey this mandate.' " *State v. Tate*, 208 Ga. App. 117, 121 (430 SE2d 9) (1993).

Despite the undisputed testimony that appellant was committing at least two and possibly three traffic offenses in the presence of Officer Shields, the trial court nevertheless granted the motion to suppress based upon

> substantial evidence that both officers have been trained in identifying the characteristics of a drug courier and that a conscious decision to focus on a relatively short strip of I-75 in Cherokee County had been made by the officers' superiors.

This "substantial evidence" was wholly irrelevant and the Court of Appeals correctly so held:

> The finding of an improper or even illegitimate motivation does not render the stop an unreasonable one. The validity of the stop depends on what the driver was doing and what that reasonably conveyed to the officer, not on what else the officer thought might be occurring.

*State v. Tate*, supra at 121.

The proper focus for the trial court was upon the specifics of what had prompted Officer Shields' initial stop of appellant, not upon Officer Shields' drug training or the prevalence of drug activity in the

area where he had been ordered by his superiors to patrol for traffic violations. There is *no* evidence that appellant even fit a drug courier profile and nothing which contradicts or is inconsistent with Officer Shields' testimony that appellant was stopped only for investigation of the minor traffic offenses that he had committed and the serious traffic offense that he was possibly committing.

> The direct and positive testimony of an unimpeached witness which is not inherently improbable, incredible or unreasonable and which is not contradicted, cannot be arbitrarily disregarded by the trier of fact. [Cits.]

*Nesbit v. Nesbit*, 241 Ga. 351, 352 (2) (245 SE2d 303) (1978). The majority's reliance upon *State v. Betsill*, 144 Ga. App. 267, 268 (2) (240 SE2d 781) (1977) as authority for the proposition that the trial court was authorized to disregard Officer Shields' testimony is misplaced. In *Betsill*, the evidence was in dispute. In what was, therefore, clearly dicta, *Betsill* erroneously cited *Chaffin v. Community Loan &c. Co.*, 67 Ga. App. 410 (1) (20 SE2d 435) (1942) for the proposition that the trier of fact "is not obligated to believe a witness, even if not contradicted by other witnesses." In fact, *Chaffin* does not stand for that proposition. *Chaffin*, supra at 410 (1), holds that

> "where there are circumstances inconsistent with the truth of [a witness'] testimony, the [trier of fact is] not obliged to believe him, even though he is not contradicted by any other witness." [Cit.]

Here, not only is Officer Shields' testimony that his initial stop of appellant was prompted by the observed and suspected traffic violations uncontradicted by any other witness, there are no "circumstances" regarding the initial stop of appellant's vehicle which are in any way inconsistent with that testimony. Accordingly, the erroneous dicta in *Chaffin* is certainly not controlling here and Officer Shields' testimony "cannot be arbitrarily disregarded by the trier of fact. [Cits.]" *Nesbit v. Nesbit*, supra at 352 (2).

The Court of Appeals correctly resolved the issue presented on appeal by holding:

> "A rule requiring a law enforcement officer to *forego* making a traffic stop which he would otherwise be authorized to make merely because he suspects that the vehicle might be engaged in the transport of illicit drugs would have little to commend it. . . ."

(Emphasis in original.) *State v. Tate*, supra at 121.

A majority of this Court reverses the Court of Appeals because the decision of that court "is predicated upon the conclusion that the trial court 'found' that [appellant] committed traffic violations in the presence of [Officer Shields]." (Majority opinion, page 53.) The trial court *did* make such a finding and, indeed, was compelled to do so because Officer Shields' testimony was *uncontradicted*. Accordingly, the Court of Appeals correctly relied upon that finding of the trial court and reversed because the trial court reached an erroneous conclusion of law notwithstanding that finding. The trial court's erroneous conclusion of law was that Officer Shields' uncontradicted testimony that his initial stop of appellant had been for the purpose of investigating actual and possible traffic violations was somehow vitiated by the irrelevant evidence regarding the nature of Officer Shields' drug training and the orders of his superiors that he patrol for traffic violations in an area where drug activity was prevalent. In reversing the Court of Appeals, this Court now sanctions the trial court's erroneous conclusion of law and, by so doing, sets a dangerous precedent which allows evidence to be suppressed based upon the subjective beliefs of a trial judge as to an officer's motivations, rather than upon such uncontradicted testimony as demands the contrary finding.

As did the Court of Appeals, I "make no judgment about the validity of [Officer Shields'] actions after the warning ticket was issued, as that subsequent part of the encounter was not challenged, ruled on, or raised on appeal." *State v. Tate*, supra at 122. With regard to the trial court's erroneous conclusion of law concerning Officer Shields' initial stop of appellant's vehicle, however, I would affirm the Court of Appeals' reversal of the grant of the motion to suppress.

I am authorized to state that Presiding Justice Hunt joins in this dissent.

DECIDED FEBRUARY 28, 1994 —
RECONSIDERATION DENIED MARCH 25, 1994.

*John R. Hesmer, Jane P. Manning,* for appellant.
*Garry T. Moss, District Attorney, Gregory A. Hicks, Assistant District Attorney,* for appellee.