[No. 47497-9-I.   Division One.   December 10, 2001.]

JEROME CLEMENT, *Respondent*, v. THE DEPARTMENT OF
LICENSING, *Appellant.*

*Christine O. Gregoire, Attorney General*, and *Laura J. Watson, Assistant*, for appellant.

*David M. Goodson* and *Michael N. Rosen*, for respondent.

WEBSTER, J. — A motorist who refuses a test of his or her breath or blood alcohol level will have his or her driver's license revoked if the refusal occurred after a legal arrest for driving under the influence of intoxicating liquor (DUI). Where the initial traffic stop of that motorist is based on the officer's belief that he or she was speeding, the Department

of Licensing has the burden of proving that there was probable cause to believe that the motorist was speeding in order for the initial stop to be valid. Here, the trooper's belief that Jerome Clement was speeding was based on a fellow officer's radar reading and his own visual observations of Clement's car. We hold that, with this evidence, the Department met its burden of proving that the trooper had probable cause to believe Clement was speeding, and thus met its burden of proving the validity of the traffic stop. Accordingly, we reverse the superior court's order and direct that the Department's order revoking Clement's driver's license be reinstated.

## FACTS

Washington State Patrol Trooper Rodriguez was operating a radar unit on I-5 and reported to Trooper Coglizer, who was working with him, that a car was approaching at 82 miles per hour. As the car passed the troopers, Trooper Coglizer saw the front end of the car dip, as if the driver had suddenly hit the brakes. Trooper Rodriguez then reported that his radar reading showed that the car was traveling at 77 miles per hour. Trooper Coglizer pursued the car and pulled it over, believing that the driver, who was later identified as Clement, was speeding. The trooper smelled a strong odor of alcohol in the car and saw that Clement's eyes were watery and bloodshot. Based upon these observations, Trooper Coglizer arrested Clement for DUI. Clement refused to submit to a breath test and, after a hearing, the Department revoked his driver's license.

Clement appealed the license revocation and the superior court reversed, finding that the record failed to establish an articulable suspicion to justify the initial stop of Clement's car. We granted the Department's motion for discretionary review and now reverse the superior court.

## DISCUSSION

Under the implied consent statute:

[a]ny person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath or blood for the purpose of determining the alcohol concentration or presence of any drug in his or her breath or blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor or any drug or was in violation of RCW 46.61.503 [driving under the age of 21 and consuming alcohol].[1]

Where, as here, a person refuses a test of his or her breath or blood for the purpose of determining alcohol concentration, the Department must revoke that person's driver's license.[2] The Department revoked Clement's driver's license for one year.[3]

We review an administrative decision such as a license revocation from the same position as the superior court.[4] Under the implied consent statute, RCW 46.20.308, the superior court reviews the Department's final order of revocation in the same manner as an appeal from a decision of a court of limited jurisdiction.[5] So, we review the order to determine whether the Department committed any errors of law.[6]

A lawful arrest of the motorist is an indispensable element triggering the motorist's implied consent to a

---

[1] RCW 46.20.308(1).

[2] RCW 46.20.308(7), .3101(1).

[3] For a person's first refusal to take a breath or blood test within seven years, where there has not been a previous incident within seven years that resulted in administrative action under the implied consent statute, the license revocation is for one year.

[4] *Walk v. Dep't of Licensing*, 95 Wn. App. 653, 656, 976 P.2d 185 (1999).

[5] RCW 46.20.308(9).

[6] *See* RALJ 9.1(a); RCW 46.20.308(9). We must accept factual determinations either made by the Department or that can reasonably be inferred from the Department's final order that are supported by substantial evidence in the record. RCW 46.20.308(9). Clement does not challenge any of the Department's factual determinations.

breath or blood test.[7] Also, the arresting officer must have reasonable grounds to believe that the person arrested had been driving a motor vehicle while under the influence of intoxicating liquor.[8] "The requirement of reasonable grounds is separate from the requirement of probable cause to arrest."[9]

Here, there is no dispute that, once Clement was stopped, the troopers had reasonable grounds to believe that he was driving a motor vehicle while intoxicated. The issue presented is whether the Department met its burden of proving that the initial stop was valid. Clement argues that in order for the initial stop to be valid, the Department had to produce foundational evidence showing the reliability and accuracy of the radar device Trooper Rodriguez operated. The Department argues that foundational evidence is not required because the radar evidence is relevant only to whether the initial stop was valid and not to whether Clement was in fact speeding.

■ ■ A traffic stop is constitutional if the officer has probable cause to believe a person has violated the traffic code.[10] Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a person of reasonable caution to believe that an offense has been committed.[11] Under the fellow officer rule, probable cause may be determined based on the

---

[7] *State v. Wetherell*, 82 Wn.2d 865, 869, 514 P.2d 1069 (1973); *O'Neill v. Dep't of Licensing*, 62 Wn. App. 112, 116, 813 P.2d 166 (1991).

[8] RCW 46.20.308(1).

[9] *O'Neill*, 62 Wn. App. at 116.

[10] *City of Bremerton v. Spears*, 134 Wn.2d 141, 158, 949 P.2d 347 (1998). Failure to comply with a speed restriction is a violation of the traffic code and is a traffic infraction. *See* RCW 46.63.020.

[11] *State v. Fricks*, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979); *see also Campbell v. Dep't of Licensing*, 31 Wn. App. 833, 835, 644 P.2d 1219 (1982) (an officer may make an investigatory stop, but before doing so must have a well-founded suspicion based on articulable facts that an offense has been committed or is presently being committed).

information possessed by the police as a whole when they are acting in concert.[12]

■ We hold that Trooper Coglizer's visual observations of Clement's car coupled, under the fellow officer rule, with Trooper Rodriguez's information that the radar showed Clement's car approaching at a speed in excess of the speed limit, were sufficient to warrant a person of reasonable caution to believe that Clement was speeding. Accordingly, this evidence was sufficient to establish probable cause to justify Trooper Coglizer's initial stop of Clement's vehicle.

■ We reject Clement's argument that to establish the validity of the traffic stop, the Department was required to go beyond this and produce foundational evidence to support the radar reading. The Department's burden with respect to the traffic stop was to prove that the stop was valid. Here, the Department met this burden with the evidence discussed above, evidence that did not include foundational radar evidence. Once the Department met this burden, it then became Clement's burden to produce evidence showing that the stop was not valid by, for example, subpoenaing Troopers Coglizer and Rodriguez.[13] We decline to require the Department to go beyond proving that there was probable cause to believe the motorist violated the traffic code. Where, as here, the Department can meet its burden without introducing foundational radar evidence, then the Department is not required to introduce such evidence.

We have reached similar conclusions in analogous cases. For example, where the Department meets its burden of proving that a motorist refused to take a breath test, it does not have the burden to show that the testing machine is functioning properly.[14] Also, once the Department proves

---

[12] *State v. White*, 76 Wn. App. 801, 805, 888 P.2d 169 (1995), *aff'd on other grounds*, 129 Wn.2d 105, 915 P.2d 1099 (1996).

[13] Evidence and witnesses may be presented at the hearing on a license revocation. *See* RCW 46.20.308(8) ("A hearing officer shall conduct the hearing, may issue subpoenas for the attendance of witnesses and the production of documents, and shall administer oaths to witnesses.").

[14] *Wolf v. Dep't of Motor Vehicles*, 27 Wn. App. 214, 616 P.2d 688 (1980).

the motorist's refusal to take a breath test, the burden shifts to the motorist to prove by a preponderance of the evidence an excuse for his or her noncompliance.[15] Courts of other states have likewise reached similar conclusions.[16]

The lower court based its reversal of Clement's license revocation on *Bokor v. Department of Licensing*[17] and *City of Seattle v. Peterson*.[18] Clement argues that these cases require our affirmance of the reversal. We find that both cases are distinguishable and that neither compels us to affirm the lower court's decision.

In *Bokor*, the Department revoked Bokor's driving privilege after he refused to submit to a portable breath test at the scene of a motor vehicle accident. The trial court admitted evidence of the portable breath test, but found that it was entitled to no weight. The court found that the trooper did not have probable cause to believe Bokor was driving under the influence of alcohol and reversed the license revocation. The court on appeal agreed that evidence of the portable breath test was entitled to no weight on the probable cause issue because there was no evidence that the trooper understood how the device worked or had

---

[15] *Rockwell v. Dep't of Licensing*, 94 Wn. App. 531, 972 P.2d 1276 (1999).

[16] *See, e.g., State v. Hiemstra*, 6 Neb. App. 940, 579 N.W.2d 550 (1998) (holding that when testimony regarding a motorist's speed is used to establish a charge other than speeding, the officer's testimony need not be corroborated); *Hennings v. State*, 236 Ga. App. 473, 512 S.E.2d 357 (1999) (holding that where the defendant was convicted of DUI, after a traffic stop for speeding, the initial stop was valid because it was based on radio information received from a fellow officer who observed the defendant's car speeding and that the State was not required to present a foundation to support any radar evidence); *Coop v. State*, 186 Ga. App. 578, 367 S.E.2d 836 (1988) (holding that the State's failure to produce the necessary foundation to support radar test results did not invalidate the defendants' convictions of trafficking in marijuana because the issue of speeding was before the court only on the issue of the legitimacy of the initial stop and not on the substantive offense of speeding); *Cantrell v. State*, 561 P.2d 973 (Okla. Crim. App. 1977) (affirming the defendant's conviction of assault and battery upon a police officer, committed after the defendant had been stopped for speeding, and holding that the radar evidence was admissible, without evidence showing the accuracy and reliability of the radar device, to show that the defendant had committed an offense in the presence of an officer on the date in question, not to show that the defendant was guilty of speeding).

[17] 74 Wn. App. 523, 874 P.2d 168 (1994).

[18] 39 Wn. App. 524, 693 P.2d 757 (1985).

assurances of its reliability from an expert or that he had a reasonable basis for believing the device would produce reasonably reliable results under the circumstances in which it was used. The court held, however, that Bokor's uncontradicted testimony established the existence of probable cause for the arrest and that the license revocation was, therefore, not erroneous.

In *Peterson*, the defendant was convicted of speeding and challenged his conviction on the ground that radar evidence was improperly admitted. At trial, no evidence was presented to authenticate the radar unit as a device that, properly operated, produced an accurate measure of the speed of a passing vehicle. The municipal court judge stated that he was satisfied that the radar was accurate. The superior court judge stated that the process or system of a particular method of traffic radar was a proper subject of judicial notice. This court held that the superior court erred by taking judicial notice that the radar unit was reliable because the subject is not one of common knowledge. So, the court held that the trial court erred by admitting the radar result as proof that Peterson had been speeding and reversed the conviction.

Neither case disposes of the issue presented here, namely, whether the troopers could rely on the radar reading to establish probable cause to stop Clement for speeding when Clement was arrested for DUI, and not speeding. *Peterson* involved a prosecution for speeding, but Clement was not prosecuted for speeding. In *Bokor*, the issue was whether the officer had probable cause to arrest the defendant for DUI, while here, the issue was whether there was probable cause to stop Clement for speeding. Nor do the cases compel an affirmance of the superior court's order.

## CONCLUSION

We hold that the Department met its burden of proving that Trooper Coglizer's stop of Clement's vehicle was valid.

The Department was not required to produce foundational evidence to support Trooper Rodriguez's radar reading. Accordingly, we reverse the superior court's order and direct that the Department's order revoking Clement's driver's license be reinstated.

GROSSE and BAKER, JJ., concur.

Review denied at 146 Wn.2d 1017 (2002).