A05A2233. YEMANE v. THE STATE.
(626 SE2d 238)

SMITH, Presiding Judge.

Samuel A. Yemane was indicted by a DeKalb County grand jury for trafficking in methamphetamine and possession of methamphetamine with intent to distribute. After the denial of his motion to suppress, Yemane consented to a bench trial on the possession count, based on the testimony elicited in the hearing on the motion to suppress.[1] He was found guilty, his motion for new trial was denied, and he appeals, contending the trial court erred in denying his motion to suppress. We disagree and affirm.

We consider three principles when reviewing a trial court's ruling on a motion to suppress:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [those findings]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation and emphasis omitted.) *Tate v. State,* 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). Viewed in this light, the evidence shows that two DeKalb police detectives received information that a

---

[1] The remaining count was nolle prossed.

stolen car was parked at an apartment complex. They located the car, which was being worked on by Yemane at the time, and ran a tag check that confirmed the vehicle had been reported stolen. They approached Yemane, informed him that the car was stolen, and placed him under arrest for the vehicle theft. A records check disclosed an outstanding misdemeanor warrant on Yemane, so he was placed "under arrest for the warrant also."

Yemane was "very cooperative" and told the detectives that the vehicle was not stolen and that they could confirm this by consulting his girlfriend in a nearby apartment. He "insisted that we go to the apartment, that it could all be cleared up." The detectives went to the apartment and knocked; nobody answered, but they could see shadows moving back and forth so they continued to knock. After about five minutes, a woman who identified herself as Karla Gonzalez and an acquaintance of Yemane, came to the door.[2] The detectives asked her if they could come in and talk about the stolen car, and she "said it was fine." Gonzalez told the officers that the vehicle was not stolen, and that they could confirm this by a telephone call to the vehicle's owner.

During their conversation, the detectives noticed that Gonzalez seemed nervous and kept glancing toward the rear of the apartment. They asked her several times if anyone else was in the apartment, but she denied it. Concerned for their safety, the detectives asked her if they could look around the apartment for other people, and "[s]he said it wasn't a problem." When one of the detectives looked into a walk-in closet in a bedroom, he saw pistols and a bag of suspected methamphetamine.

In several enumerations of error, Yemane contends the trial court erred in denying his motion to suppress. He argues that permission to enter the apartment was not freely and voluntarily given, that consent was not requested prior to the entry into the back of the apartment, and that consent to enter the back of the apartment was not freely and voluntarily given. He relies for these contentions on the testimony of Gonzalez.

At the hearing on the motion to suppress, Gonzalez stated that the detectives simply barged into the apartment without saying anything when she opened the door, that "[t]hey just went through the apartment" without asking her permission, and that they forced her to write an incriminating statement under threat of jail. So far as we can determine from his brief, Yemane argues that Gonzalez had just awakened, was uneducated and not a native English speaker,

---

[2] Gonzalez testified at the hearing on the motion to suppress that she was living with Yemane and that he was the father of her child.

and thus was unlikely to have heard any request for entry and therefore could not have consented.[3] He also points to factual conflicts between the officers' testimony on the timing of the request to enter the rear of the apartment.

Here, the trial court explicitly found that it was required to make "a judgment of credibility" among conflicting witnesses. But Yemane's brief before this court largely consists of a restatement of his arguments at trial regarding disputed issues of fact. He insists that we should reweigh the conflicting testimony and reach a conclusion contrary to that made by the trial court. This we cannot do. *Tate*, supra, 264 Ga. at 54. The trial court chose to disbelieve Yemane's witness and to believe the testimony of the police officers that they received consent to enter and to check the apartment. Since some evidence supports this finding, we affirm.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED JANUARY 19, 2006.

*W. Michael Maloof, William F. Rucker*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.

---

[3] Gonzalez acknowledged on cross-examination that she had testified in English, that she spoke English, and that she understood "every word" the officers told her.