**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 4, 2013**

# In the Court of Appeals of Georgia

A12A1893. DURHAM v. THE STATE.                    DO-072

DOYLE, Presiding Judge.

Angela Durham appeals from the denial of her motion for new trial following her conviction for violating the Georgia Controlled Substances Act by manufacturing methamphetamine.[1] She contends that the trial court erred by denying her motion to suppress evidence found during a search of her residence. Discerning no error, we affirm.

On review of the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial. Where the evidence at a hearing on a motion to suppress is uncontroverted and no question of credibility is presented, we review the trial court's application of the law to these undisputed facts de novo. As to questions

---

[1] OCGA § 16-13-30 (b). A second count based on attempt to manufacture was merged with the manufacturing violation.

of fact and credibility, however, we construe the evidence in favor of the trial court's findings and judgment, which must be accepted unless clearly erroneous.[2]

So viewed, the record shows that a drug investigation officer with the Georgia Bureau of Investigation ("GBI") received information from the U. S. Drug Enforcement Administration ("DEA") that a nearby police department had arrested Durham the night before and that a DEA informant had said that there "was possibly" a methamphetamine lab at Durham's residence. The GBI officer went with five other officers to the residence to do a "knock and talk" and request consent to search the residence.

When the officers arrived at the home, they knocked on the door, and no one answered. The GBI officer went into a neighbor's yard and looked into Durham's garage from that vantage point. In the garage, the officer spotted a can of Coleman camping fuel, and he smelled "the odor of methamphetamine that would be cooking or had been cooked in that garage. . . ."

Based on this information, the officers decided to seek a warrant to search the premises. The GBI officer waited, alone, while the others left the scene to obtain the

---

[2] (Citations omitted.) *Wilson v. State*, 308 Ga. App. 383 (708 SE2d 14) (2011).

warrant. While the GBI officer waited, Durham arrived at the residence with her brother, who was briefly questioned by the officer and then allowed to leave. As the GBI officer spoke with Durham, an officer from the local police department arrived, and the GBI officer asked Durham for consent to search the residence. She replied that he could search the residence when he got a warrant. The GBI officer said that he had sent others to obtain the warrant, and he explained that based on his observations she was not going to be allowed to go in the house while they waited. Because of Durham's "attitude" and "irate" demeanor, as well as his information, observations, and belief that the location was used for manufacturing methamphetamine, the officer elected to detain Durham in the back of the police car to avoid escalating the situation while he maintained the security of the residence.

After approximately 25 minutes, Durham requested to speak with the GBI officer and stated that she would consent to a search of her residence. The GBI officer read Durham the consent form, emphasizing to her that he could not promise any favorable treatment in exchange for her consent, and Durham signed the form, providing her house key to the officers. The GBI officer called the other officers to tell them a warrant would not be needed, and they returned to the scene to search the premises. In the garage, officers found materials commonly used to manufacture

3

methamphetamine, including several bottles of pseudoephedrine and ephedrine pills, hydrogen peroxide, alcohol, empty Coleman fuel cans, a large quantity of matches and matchbooks, an empty muriatic acid bottle, plastic tubing, a hand made "gasser," lye, jars, and scales.

Based on these materials, Durham was charged with manufacturing methamphetamine and attempted manufacture of methamphetamine. Prior to trial, Durham moved to suppress the evidence found in the search, and the trial court denied the motion, specifically finding that the GBI officer had authority to detain her and that her consent was voluntary. Following a jury trial, Durham was found guilty on both counts, which merged into a conviction on the single manufacturing count. After denying her motion for new trial, the trial court granted this out-of-time appeal.

Durham contends that the trial court erred by denying her motion to suppress, arguing that her consent was invalid because it was involuntary.

It is well-settled that the prosecution has the burden of proving that the consent was, in fact, freely and voluntarily given. In determining whether the consent was voluntary, we will look to the totality of all the surrounding circumstances. These factors include the fluency of the consenting person regarding the language being used by the police, the age, education and intelligence of the consenting person, the length of and basis for the duration of detention until the consent was obtained,

whether the accused was advised of his relevant constitutional rights including his right to refuse to consent, the prolonged nature and intensity of any questioning, the use of threats or physical punishment, and the psychological impact of all these factors on the consenting person.[3]

"[T]he trial court's factual determinations on such matters will be upheld unless clearly erroneous."[4]

At the outset, we note that the officer had authority to detain Durham and secure the scene while a warrant was obtained, even construing her detention as an arrest, as opposed to a temporary investigatory detention. "Probable cause [to arrest] exists if the arresting officer has knowledge and reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense."[5] At the heart of this determination "is the question of whether the totality of the circumstances lend themselves to a reasonable ground for

---

[3] (Citations and punctuation omitted.) *Mallarino v. State*, 190 Ga. App. 398, 402 (2) (379 SE2d 210) (1989).

[4] *Stevens v. State*, 286 Ga. 692, 694 (2) (690 SE2d 816) (2010).

[5] (Punctuation omitted.) *Simpson v. State*, 289 Ga. 685, 687 (2) (715 SE2d 142) (2011).

5

belief of guilt."[6] The GBI officer's training, personal experience with "dozens and dozens" of illegal methamphetamine labs , his knowledge of her recent arrest for a methamphetamine offense, and his observation of Coleman fuel and the odors associated with methamphetamine "cooking" at the garage where Durham resided, gave him a reasonable ground for belief of her guilt.[7] Therefore, Durham's consent was not based on an unauthorized detention.[8]

With respect to whether Durham's consent was otherwise involuntary, the record shows that during her detention she was not interrogated or questioned, and the duration of the detention was not overly long.[9] Durham did not appear intoxicated,

---

[6] (Punctuation omitted.) Id.

[7] See *Newton v. State*, 313 Ga. App. 889, 894 (2) (723 SE2d 95) (2012) (knowledge of prior methamphetamine activity combined with odor of methamphetamine ingredients supported probable cause to obtain search warrant); *Minor v. State*, 298 Ga. App. 391, 396 (1) (b) (680 SE2d 459) (2009) (detention authorized by probable cause based on odor and other facts while warrant was obtained); *O'Keefe v. State*, 189 Ga. App. 519, 526 (3) (376 SE2d 406) (1988) ("Odor as well as sight, hearing, taste[,] or touch can be used in establishing probable cause.").

[8] Compare *Pledger v. State*, 257 Ga. App. 794, 800 (572 SE2d 348) (2002) (reversing denial of motion to suppress because consent was given pursuant to illegal entry into defendant's home and seizure of her person).

[9] See *Mallarino*, 190 Ga. App. at 402 (2) (33 minute detention during traffic stop did not render consent involuntary).

6

and she spoke fluent English. She was not being punished or threatened, and her consent came after she spontaneously sought out the officer to talk to him. After that, the officer explicitly clarified that her consent would not benefit her in any resulting investigation, and he read to her the consent form before she signed it. Under these circumstances, we discern no clear error in the trial court's conclusion that the consent was voluntarily given.[10] Accordingly, the trial court did not err by denying Durham's motion to suppress.

*Judgment affirmed. Andrews, P. J. and Boggs, J., concur.*

---

[10] See generally *State v. Poppell*, 277 Ga. 595, 598 (3) (592 SE2d 838) (2004).